1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | ANYA M. BINSACCA
Supervising Deputy Attorney General
5 | BRIAN C. KINNEY, State Bar No. 245344
Deputy Attorney General
6 |   455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7 |   Telephone:  (415) 703-5255
Fax:  (415) 703-5843
8 |   Email:  Brian.Kinney@doj.ca.gov

9 | Attorneys for Respondent Ben Curry, Acting
Warden of the Correctional Training Facility

10

11

12 | IN THE UNITED STATES DISTRICT COURT

13 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

14 | SAN FRANCISCO DIVISION

15 | **Juan Manuel Chavez,**                 C07-5512 PJH

16 |                         Petitioner,    **ANSWER TO THE ORDER TO SHOW
CAUSE; MEMORANDUM OF POINTS
17 |           v.                            AND AUTHORITIES**

18 | **Ben Curry,  Warden,**

19 |                         Respondent.
Judge:   The Honorable Phyllis J. Hamilton

20

21

22

23

24

25

26

27

28

---

Answer to Order to Show Cause; Mem. of P. & A.

*Chavez v. Curry*
C07-5512 PJH

# TABLE OF CONTENTS

Page

ANSWER TO THE ORDER TO SHOW CAUSE ................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 9

    ARGUMENT

    THE STATE COURT DENIALS OF CHAVEZ'S HABEAS CLAIM WERE
    NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION OF,
    CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN
    UNREASONABLE DETERMINATION OF THE FACTS. ............................... 9

    A.   The State Court Decisions Were Not Contrary to Clearly Established
        Federal Law. ....................................................................................... 10

        1.   Chavez received all process due under the only United States
            Supreme Court law addressing due process in the parole context. ..... 10

        2.   The Ninth Circuit's some-evidence test is not clearly established
            Supreme Court law. ....................................................................... 10

        3.   Even if the some-evidence standard were clearly established federal
            law, the state court decisions correctly applied this standard. ......... 12

    B.   The State Court Decisions Upholding the Board's Parole Denial
        Reasonably Determined the Facts. ...................................................... 15

CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Apprendi v. New Jersey*
     530 U.S. 466, 488-90 (2000)           8

*Blakely v. Washington*
     542 U.S. 296, 303-04 (2004)           9

*Carey v. Musladin*
     ___ U.S. ___, 127 S.Ct. 649, 653           6, 11

*Estelle v. McGuire*
     502 U.S. 62, 67 (1991)           8

*Foote v. Del Papa*
     492 F.3d 1026, 1029 (9th Cir. 2007)           11

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
     442 U.S. 1, 12 (1979)           6, 7, 10, 12, 17

*Himes v. Thompson*
     336 F.3d 848, 853 (9th Cir. 2003)           10, 13

*In re Dannenburg*
     34 Cal. 4th 1061, 1087 (2005)           6

*Irons v. Carey*
     505 F.3d 846, 851 (9th Cir. 2007)           7, 12

*Nguyen v. Garcia*
     477 F.3d 716 (9th Cir. 2007)           11

*Rosenkrantz*
     29 Cal. 4th at 678-679           8, 11, 13

*Sandin v. Connor*
     515 U.S. 472, 484 (1995)           6

*Sass v. Cal. Bd. of Prison Terms*
     461 F.3d 1123, 1128 (9th Cir. 2006)           7, 12, 13

*Schriro v. Landrigan*
     __ U.S. __, 127 S. Ct. 1933, 1942 (2007)           11

*Superintendent v. Hill*
     472 U.S. 445 (1985)           12, 13

*Wainwright v. Greenfield*
     474 U.S. 284 (1986)           12

*Williams v. Taylor*
     529 U.S. 362, 412 (2000)           9

Answer to Order to Show Cause; Mem. of P. & A.

*Chavez v. Curry*
C07-5512 PJH

**TABLE OF AUTHORITIES (continued)**

Page

**Statutes**

California Code of Regulations, Title 15
§ 2281(b)                                                              8
§ 2402(b)                                                              8

California Penal Code
§ 190(a)                                                               9

United States Code, Title 28
§ 2244(d)(1)                                                           9
§ 2254(d)(1)                                                           6
§ 2254(d)(1-2)                                                         9
§ 2254(d)(2)                                                          15

**Other Authorities**

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)    7-12, 15, 17

1  EDMUND G. BROWN JR.
Attorney General of the State of California
2  DANE R. GILLETTE
Chief Assistant Attorney General
3  JULIE L. GARLAND
Senior Assistant Attorney General
4  ANYA M. BINSACCA
Supervising Deputy Attorney General
5  BRIAN C. KINNEY, State Bar No. 245344
Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5255
Fax:  (415) 703-5843
8   Email:  Brian.Kinney@doj.ca.gov

9  Attorneys for Respondent Ben Curry, Acting
Warden of the Correctional Training Facility

10

11                IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15  **Juan Manuel Chavez,**                    C07-5512 PJH

16                             Petitioner,     **ANSWER TO THE ORDER TO SHOW
                                               CAUSE; MEMORANDUM OF POINTS
17              v.                             AND AUTHORITIES**

18  **Ben Curry,  Warden,**

19                            Respondent.

20                                             Judge:   The Honorable Phyllis J. Hamilton

21        Petitioner Juan Manuel Chavez, an inmate at the Correctional Training Facility serving an

22  indeterminate sentence for second-degree murder, represents himself in this habeas action.

23  Petitioner alleges that the Board of Parole Hearings improperly denied him parole at his March 5,

24  2007 subsequent parole consideration hearing.  Specifically, Chavez argues that:  (1) the Board's

25  decision violated his due process rights because it used immutable factors; (2) the Board's refusal

26  to give him a parole date violated his California statutory right to good-time credits; (3) the

27  Board's finding that he needs further therapy is not supported by "some evidence;" (4) the

28  Board's use of police reports as "some evidence" violated his due process rights and the

Answer to Order to Show Cause; Mem. of P. & A.                    *Chavez v. Curry*
                                                                  C07-5512 PJH

1   Confrontation Clause; (5) the Board's finding that the offense was particularly "cruel and

2   callous" was not supported by evidence; (6) the Board's finding that it needed a new

3   psychological report was not supported by "some evidence;" (7) the Board's decision to set his

4   next hearing in two years, rather than one, was not supported by evidence; (8) he received

5   ineffective assistance of counsel at trial because his lawyer failed to explain that he would never

6   be granted parole; (9) the Board violated his Sixth Amendment right to a jury trial by treating the

7   crime he pleaded guilty to as a greater offense; and (10) the Board's finding violated his due

8   process rights because it contradicts the California Department of Corrections and

9   Rehabilitation's (CDCR) finding that considers him a "low risk."  The Court summarily

10   dismissed the arguments in number two, eight, and ten.  The Court issued a December 17, 2007

11   Order to Show Cause as to Chavez's remaining claims, and Respondent Ben Curry, the current

12   Acting Warden of the Correctional Training Facility, submits this Answer with supporting

13   memorandum of points and authorities.

14                           **ANSWER TO THE ORDER TO SHOW CAUSE**

15        In response to the Petition for Writ of Habeas Corpus filed on October 30, 2007,

16   Respondent hereby admits, denies, and alleges:

17        1.    Chavez is lawfully in the custody of the California Department of Corrections and

18   Rehabilitation (CDCR) following his March 24, 1993 conviction for second-degree murder.  (Ex.

19   A, Abstract of Judgment.)  He is currently serving an indeterminate sentence of fifteen years to

20   life.

21        2.    The remaining issues before the Court do not challenge the underlying conviction.

22   Also, Chavez does not contest that he received notice of his 2007 parole consideration hearing,

23   appeared and participated at the hearing, and was told of and received a copy of the Board's

24   decision finding him unsuitable for parole.

25        3.    Respondent affirmatively alleges that Chavez used his bare hands to strangle to death

26   the victim, Sonia Sanchez, whom Chavez had a casual and sexual relationship with while he

27   maintained a separate relationship with another woman.  (Ex. B, Police Interview, at pp. 55-56;

28   Ex. C, Autopsy Report, at pp. 1-2; Ex. D, Probation Officer's Report, at pp. 2, 6.)  In addition to

1   the signs of strangulation, the victim was found with lacerations to her vagina and anus. (Ex. C,

2   at pp. 1, 3.) The autopsy report also indicates that the victim incurred a small contusion area on

3   her scalp, and abrasions on her left hand. (*Id.* at p. 3.)

4       After strangling the victim, Chavez dumped the victim's body, nude from the waist down,

5   on a beach. (Ex. E, Investigative Crime Report, at p. 12.) A witness observed Chavez pull the

6   victim's body from a car. (*Id.* at pp. 5-6.) Chavez then dragged the victim's body onto the sand

7   and left the victim's body face down. (*Id.* at pp. 5-6, 12.) Next, Chavez drove away in the

8   victim's car. (*Id.* at p. 6.) The witness called "911" at around 5:00 a.m. and reported the

9   incident. (*Id.* at pp. 6, 11-12.) When police discovered the victim's body, she had two foot

10  prints etched into the back of her sweatshirt. (*Id.* at pp. 8, 12.)

11      Soon thereafter, police officers pulled Chavez over in the victim's car. (*Id.* at pp. 26-27.)

12  The arresting police officers reported that blood stains appeared to be on Chavez's hands and on

13  a blanket in the passenger seat. (*Id.* at p. 29.) The officers also observed a women's purse on the

14  passenger seat. (*Id.*) The officers then detained Chavez and transported him to the police station.

15  (*Id.*)

16      Officers administered a blood-alcohol test, which determined that Chavez had between a

17  .12% and .13% blood-alcohol content at approximately 6:11 a.m. (*Id.* at p. 34.) During the

18  booking inventory of Chavez's property, the booking officer found two gold bracelets, one which

19  containing the name "SONIA" on the name plate, and two gold rings in Chavez's left front shirt

20  pocket. (*Id.*) The booking officer observed that all the items appeared to be woman's jewelry.

21  (*Id.*) The officers also observed that Chavez had a small, bloody scrape on his left wrist, and two

22  scratches on his right thumb. (*Id.* at p. 35.)

23      According to Chavez's statements to police, he and Sonia Sanchez were involved in a

24  relationship. (Ex. B, at p. 54; Ex. D, at p. 2.) The two were preparing to have sexual intercourse

25  in Ms. Sanchez's car, when an argument ensued. (Ex. B, at p. 56; Ex. D, at p. 2.) Chavez stated

26  that after he began choking the victim with both hands, he blacked out. (*Id.*) When he awoke,

27  Ms. Sanchez was dead. (*Id.*)

28      4.    Respondent affirmatively alleges the Chavez pleaded guilty to second-degree murder

Answer to Order to Show Cause; Mem. of P. & A.                                    *Chavez v. Curry*
                                                                                  C07-5512 PJH

1  for killing Sonia Sanchez. (Ex. D, at p. 1.)

2      5.    Respondent affirmatively alleges that Chavez was on probation at the time police

3  officers arrested him for the commitment offense. (*Id.* at p. 4; Ex. F, Lifer Prisoner Evaluation

4  Report, at p. 2; Ex. G, Parole Hearing Transcript, at p. 57.) The probation stemmed from a

5  November 19, 1991 arrest, and later conviction of, misdemeanor burglary and vandalism. (*Id.*)

6  As a result of the conviction, Chavez received a one-year jail sentence and 36 months of

7  probation. (*Id.*)

8      6.    Respondent affirmatively alleges that at the time of the commitment offense Chavez

9  used marijuana approximately twice a month and cocaine occasionally. (Ex. D, at p. 5.) In the

10 past, he also used PCP. (*Id.*; Ex. F, at p. 3.; Ex. H, 2006 Mental Health Evaluation, at p. 2; Ex. I,

11 2002 Mental Health Evaluation, at pp. 3-4.) Chavez also admits that in the past he excessively

12 used alcohol. (Ex. H, at p. 2.) According to Chavez, he used to be an alcoholic. (*Id.*)

13     7.    Respondent affirmatively alleges that at his 2007 parole consideration hearing, Chavez

14 made several assertions concerning the facts surrounding the murder and his subsequent arrest.

15 (Ex. G, at pp. 35-45.) Some of these assertions were inconsistent with Chavez's prior statements

16 and the officers' observations at the time of his arrest. First, Chavez told the Board that he

17 remembers the argument he had with the victim, but that he blacked out before strangling her

18 with his hands. (*Id.* at pp. 38, 44.) He stated that he does not remember his hands around her

19 throat. (*Id.* at p. 44.) However, when Chavez confessed to the crime, he told officers that he

20 blacked out *after* he began choking the victim with both hands. (Ex. B, at p. 56; see also Ex. H,

21 at p. 3 [Chavez describing crime to psychologist].) Second, when asked why he had the victim's

22 jewelry in his shirt pocket during the inventory search, Chavez told the Board that the police had

23 put those items in his shirt pocket. (Compare Ex. G, at pp. 36-37 with Ex. E, at p. 34.)

24 According to Chavez, those items were on the seat in the victim's car when the police pulled him

25 over, and the arresting officers put those items on him when they arrested him. (Ex. G, at p. 37.)

26     8.    Respondent affirmatively alleges that in his 2007 parole consideration hearing, Chavez

27 maintained that the murder occurred as a result of "ignorance completely from being stupid and

28 drunk." (Ex. G, at p. 44.) Chavez stated that "the main issue of it was me and my drinking."

Answer to Order to Show Cause; Mem. of P. & A.                    *Chavez v. Curry*
                                                                 C07-5512 PJH

1  (*Id.* at p. 41.) In addition, Chavez attributed his inability to recall several aspects of the crime to

2  his alcohol consumption that night. (*Id.* at p. 38.)

3      9.  Respondent affirmatively alleges that in his 2007 parole consideration hearing, Chavez

4  stated that he did not know if the victim was dead when he pulled her out of her car and dumped

5  her body on the beach. (*Id.* at p. 39.) He stated that he did not call "911" and left her there

6  instead because he panicked and was afraid. (*Id.*) Chavez gave the same explanation for taking

7  the victim's car. (*Id.* at p. 36.)

8      10.  Respondent affirmatively alleges that at his 2007 parole consideration hearing, Chavez

9  denied that he had sex with the victim on the night he murdered her. (*Id.* at p. 37-38.) When

10  asked about the indications of sodomy and the vaginal laceration on the victim, Chavez claimed

11  that they had engaged in foreplay and were messing around with each other before the argument.

12  (*Id.*)

13      11.  Respondent affirmatively alleges that the Board denied Chavez parole in his 2007

14  parole consideration hearing. (*Id.* at pp. 55-61.) In denying parole, the Board relied on the

15  gravity of the commitment offense. (*Id.* at pp. 55-56.) The Board explained that the offense was

16  especially cruel and callous in that Chavez strangled the victim with his hands. (*Id.*) The Board

17  also noted that the lack of significant injuries on Chavez after his arrest indicates that Chavez

18  strangled the victim with little provocation or justification. (*Id.*; see also Ex. E, at p. 35.)

19      The Board also relied on Chavez's lack of insight with regard to the underlying causes of

20  the murder. (Ex. G, at pp. 56-58.) The Board failed to believe that the sole reason for the crime

21  was Chavez's intoxication. (*Id.* at p.57.) The Board noted that by blaming alcohol and claiming

22  that he blacked out, Chavez was distancing himself from the moral responsibility of the murder.

23  (*Id.*) The Board acknowledged that Chavez attended an Anger and Self-Awareness Course in

24  2005, but noted that he needs further therapy in order to face, discuss, understand, and cope with

25  stress in a nondestructive manner. (*Id.* at pp. 23, 57.)

26      In addition, the Board's denial referenced other facts concerning the magnitude of the crime

27  and Chavez's credibility when explaining it. For instance, the Board noted the injuries

28  discovered on the victim's anus and vagina. (*Id.* at p. 56.) The Board also commented that after

Answer to Order to Show Cause; Mem. of P. & A.                              *Chavez v. Curry*
                                                                            C07-5512 PJH

1  committing the murder Chavez took the victim's car, and was found with the victim's jewelry in

2  his pocket. (*Id.*) Yet rather than offering true insights into his behavior that night, Chavez told

3  the Board that he blacked out from the alcohol and panicked. (*Id.*)

4      12.  Respondent affirmatively alleges that the Board considered all relevant information in

5  denying Chavez parole, including those factors indicative of parole suitability. (*Id.* at pp. 18-28,

6  60.)

7      13.  Respondent affirmatively alleges that the Los Angeles County District Attorney's

8  office opposed granting Chavez parole. (*Id.* at pp. 46-50, 60.)

9      14.  Respondent affirmatively alleges that it appears Chavez filed a habeas petition in the

10 Los Angeles County Superior Court raising the same issues that he alleges here, and that the

11 superior court rendered a denial. (See Ex. J, Appellate Court Petition, at p. 6 [acknowledging

12 filing superior court petition]; and Ex. K, Appellate Court Denial [referencing Super. Ct. No.

13 NA013974].) Unfortunately, the superior court could not located the petition or denial. As a

14 result, Respondent could not obtain a state-court reasoned decision.

15      15.  Respondent admits that the California Court of Appeal issued a July 19, 2007 denial of

16 Chavez's habeas petition that raised the same contentions that he alleges here. (Ex. K.)

17 Additionally, the California Supreme Court denied Chavez's petition on October 10, 2007.

18 Hence, Respondent admits Chavez exhausted his state court remedies in regard to the issues

19 currently before this Court. 28 U.S.C. § 2254(d)(1).

20      16.  Respondent denies that the state courts' adjudications of Chavez's claims were

21 contrary to, or involved an unreasonable application of, clearly established federal law as

22 determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

23      17.  Respondent preserves the argument that Chavez does not have a federally protected

24 liberty interest in parole. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty

25 interest is created unless an action imposes an atypical or significant hardship compared with

26 ordinary prison life); *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12

27 (1979) (liberty interest in conditional parole-release date created by unique structure and

28 language of state parole statute); and *In re Dannenburg*, 34 Cal. 4th 1061, 1087 (2005)

Answer to Order to Show Cause; Mem. of P. & A.                    *Chavez v. Curry*
                                                                  C07-5512 PJH

6.

1  (California's parole scheme is a two-step process that does not impose a mandatory duty to grant

2  life inmates parole before a suitability finding); *contra Sass v. Cal. Bd. of Prison Terms*, 461

3  F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a federally protected

4  liberty interest in parole date).

5      18.  Respondent affirmatively alleges that Chavez had an opportunity to present his case to

6  the Board, and the Board provided him with a detailed explanation for its parole denial. Thus,

7  Chavez received all process due under *Greenholtz*, the only clearly established federal law

8  regarding due process rights of inmates at parole hearings.

9      19.  Respondent affirmatively alleges that the Board's decision is supported by some

10  evidence. However, notwithstanding the Ninth Circuit's contrary decision in *Irons v. Carey*, 505

11  F.3d 846, 851 (9th Cir. 2007), Respondent denies that the Supreme Court has ever clearly

12  established that a state parole board's decision must be supported by some evidence.

13      20.  Respondent affirmatively alleges that federal due process does not preclude the Board

14  from relying on immutable factors to deny parole. *Sass,* 461 F.3d at 1129. Therefore, Chavez's

15  claim — alleging that the Board's reliance on immutable factors violated his due process rights

16  — fails under AEDPA because the state court decisions to deny the same claim were not contrary

17  to, and did not involve an unreasonable application of, clearly established United States Supreme

18  Court law.

19      21.  Respondent denies that clearly established federal law requires the Board to support

20  every finding or recommendation in a parole consideration hearing with some evidence.

21  Therefore, Chavez's claim that some evidence does not support the Board's finding that he

22  requires further therapy fails under AEDPA. Nonetheless, the Board's recommendation is

23  supported by some evidence. This recommendation resulted from Chavez's lack of insight into

24  the causative factors of the commitment offense. (Ex. G, at pp. 56-58.) And Chavez's lack of

25  insight was reflected by the manner in which he blamed alcohol for his actions and his lack of

26  candor when discussing the facts of the crime. (*Id.* at pp. 38, 44, 56-58.)

27      22.  Respondent denies that the Board's use of police reports violates due process or the

28  Confrontation Clause. Respondent further denies that there is a clearly established federal right

Answer to Order to Show Cause; Mem. of P. & A.                                  *Chavez v. Curry*
                                                                                C07-5512 PJH

1  that prevents the Board from using such information. Moreover, California law requires the

2  Board to consider "[a]ll relevant, reliable information available . . ." Cal. Code Regs. tit. 15, §

3  2402(b). Accordingly, the Board did not violate federal law nor California law in utilizing the

4  police reports for its decision.

5      23.  Respondent affirmatively alleges that Chavez's claim that no evidence supports the

6  finding that the offense was particularly cruel and callous fails under AEDPA. The state court

7  decisions to deny this same claim were not contrary to, and did not involve an unreasonable

8  application of, clearly established United States Supreme Court law.

9      24.  Respondent denies that clearly established federal law requires the Board to support

10  every finding or recommendation in a parole consideration hearing with some evidence.

11  Therefore, Chavez's claim that some evidence does not support the Board's finding that it needed

12  a new psychologist report fails under AEDPA. Furthermore, the Board's denial of parole was

13  not based on the lack of a psychologist report. (Ex. G, at p. 58.) Rather, the Board merely noted

14  that a psychologist examination would be beneficial for the next parole hearing. (*Id.* at pp. 58-

15  59.)

16      25.  Respondent admits that the Board issued a two-year denial of parole, rather than a one-

17  year denial. However, Respondent denies that Chavez maintains a clearly established federal

18  right with regard to the length of time a parole denial may extend. Respondent affirmatively

19  alleges that such claims are matters of state law, which cannot be grounds for federal habeas

20  relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (holding mere violations of state law are not

21  cognizable under federal habeas law).

22      26.  Respondent denies that the Board violated Chavez's Sixth Amendment rights or

23  conducted post-trial fact finding in violation of Chavez's right to a jury trial. Respondent denies

24  that there is a clearly established federal right that prevents the Board from conducting post-

25  conviction findings. Respondent affirmatively alleges that the Board properly considered all

26  relevant and reliable factors that were probative of Chavez's parole suitability. Cal. Code Regs.

27  tit. 15, § 2281(b); *Rosenkrantz*, 29 Cal. 4th at 678-679. Respondent affirmatively alleges that the

28  United States Supreme Court holdings in *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000),

1  and *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), do not apply here because Chavez is

2  not serving a sentence beyond the prescribed statutory maximum for second-degree murder. *See*

3  Cal. Penal Code § 190(a).

4      27.  Respondent admits Chavez's claims are timely under 28 U.S.C. § 2244(d)(1) and that

5  the Petition is not barred by any other procedural defenses.

6      28.  Respondent denies that an evidentiary hearing is necessary in this matter.

7      29.  Respondent affirmatively alleges that Chavez fails to establish any grounds for federal

8  habeas relief.

9      30.  Except as expressly admitted above, Respondent denies, generally and specifically,

10  each allegation of the petition, and specifically denies that Chavez's administrative, statutory, or

11  constitutional rights have been violated in any way.

12      Accordingly, Respondent respectfully requests that the Court deny the Petition for writ of

13  habeas corpus and dismiss these proceedings.

14  **MEMORANDUM OF POINTS AND AUTHORITIES**

15  **ARGUMENT**

16

17  **THE STATE COURT DENIALS OF CHAVEZ'S HABEAS CLAIM
WERE NEITHER CONTRARY TO, OR AN UNREASONABLE
APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR**

18  **BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

19      The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) modified "the role

20  of federal habeas courts in reviewing petitions filed by state prisoners by placing a new constraint

21  on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas

22  corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529

23  U.S. 362, 412 (2000).  Under AEDPA, a federal court may grant a writ of habeas corpus on a

24  claim that a state court already adjudicated on the merits *only if* the state court's adjudication was

25  either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal

26  law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable

27  determination of the facts in light of the evidence presented at the State Court proceeding." 28

28  U.S.C. § 2254(d)(1-2).

Answer to Order to Show Cause; Mem. of P. & A.

*Chavez v. Curry*
C07-5512 PJH

1    Here, the state court decisions denying Chavez's claims for habeas relief were neither

2    contrary to, or an unreasonable application of, federal law.[1]  In addition, the state court decisions

3    were not based on an unreasonable determination of the facts in light of the evidence presented.

4    Therefore, Chavez fails to establish a violation of AEDPA standards, and the state court

5    decisions denying habeas relief must stand.

6
7    **A.    The State Court Decisions Were Not Contrary to Clearly Established Federal Law.**

8    Under the first AEDPA standard, a federal court may grant habeas relief if the state court

9    decision was contrary to, or an unreasonable interpretation of, clearly established federal law as

10   determined by the Supreme Court of the United States.  Here, Chavez received all process due

11   under *Greenholtz*, the only clearly established federal law regarding the due process rights of an

12   inmate at a parole-consideration hearing.

13
14   **1.    Chavez received all process due under the only United States Supreme Court law addressing due process in the parole context.**

15   In *Greenholtz*, the United States Supreme Court established the due process protections

16   required in a state parole proceeding.  The Court held that the only process due at a parole

17   consideration hearing is an opportunity for the inmate to present his case, and an explanation for

18   a parole denial. *Greenholtz*, 442 U.S. at 16.

19   Chavez received both of these protections at his 2007 parole consideration hearing.  (See

20   generally Ex. G.)  Therefore, the state courts' adjudications of his habeas claim did not violate

21   clearly established Supreme Court precedent.  Accordingly, Chavez's claim fails under AEDPA.

22
23   **2.    The Ninth Circuit's some-evidence test is not clearly established Supreme Court law.**

24   Chavez challenges the sufficiency of the evidence the Board relied on in its decision.  While

25   _____

26   1.  When, as here, the state court's holding does not provide a reasoned explanation, the
     reviewing court must independently review the record to determine whether the state court decision

27   was a reasonable application of clearly established federal law. *Himes v. Thompson*, 336 F.3d 848,
     853 (9th Cir. 2003). While it appears that the superior court rendered a reasoned decision (see Ex.'s

28   J and K), Respondent could not obtain these records from the Los Angeles County Superior Court.

1    California law requires a reviewing court to apply the some-evidence standard of review, *In re*

2    *Rosenkrantz*, 29 Cal. 4th 616, 658 (2002), the some-evidence test should not apply to a federal

3    habeas proceeding challenging a parole denial, because the Supreme Court has never found that

4    due process requires this level of judicial review.

5         The United States Supreme Court reiterated that for AEDPA purposes, "clearly established

6    federal law" refers only to the holdings of the nation's highest court on the specific issue

7    presented. *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006). In *Musladin*, the Ninth

8    Circuit held that under clearly established federal law courtroom spectators who wore buttons

9    depicting the victim in a murder trial inherently prejudiced the defendant and denied him a fair

10   trial. *Id.* at 652. In vacating the Ninth Circuit's decision, the Supreme Court explained that the

11   two Supreme Court cases that the Ninth Circuit relied on — one involving a defendant who was

12   required to wear prison clothing during trial and the other concerning a defendant who had four

13   uniformed troopers placed behind him at trial — involved state-sponsored courtroom practices

14   that were unlike the private conduct of the victim's family. *Id.* at 653-54. As a result, the Court

15   held that "given the lack of applicable holdings from [the Supreme Court], it could not be said

16   that the state court 'unreasonably appl[ied] . . . clearly established Federal law.'" *Id.* at 653-54.

17        Similarly, the Supreme Court found in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933,

18   1942 (2007), that a federal habeas petitioner maintained no claim under AEDPA because

19   Supreme Court precedent finding ineffective assistance of counsel when an attorney fails to

20   adequately investigate mitigating evidence is factually distinct from a defense attorney failing to

21   investigate mitigating evidence after the client demonstrates a reluctance to assist the

22   investigation. Consequently, the Supreme Court indicated that circuit courts may not import —

23   under the guise of "clearly established federal law" — a federal standard used in one context to a

24   different factual circumstance. *Id.*; *see also Musladin*, 127 S. Ct. at 653-54.[2]

25   _____

26        2. Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases. *See
     e.g., Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (affirming district court's denial of

27   habeas claim alleging ineffective assistance of appellate counsel based on an alleged conflict of
     interest because the Supreme Court has never held — even though the Ninth Circuit has — that such

28   an irreconcilable conflict violates the Sixth Amendment); and *Nguyen v. Garcia*, 477 F.3d 716 (9th

1    Despite the Supreme Court's guidance in this area, the Ninth Circuit continues to extend the

2  *Hill* some-evidence standard of review — a Supreme Court holding applicable to prison

3  disciplinary hearings — to habeas petitions challenging denials of parole. *Sass v. Cal. Bd. of*

4  *Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) (referencing *Superintendent v. Hill*, 472 U.S. 445

5  (1985) — a prison disciplinary case — for proposition that Board's denial of parole requires

6  some evidence); *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007) (pet. for reh'g en banc denied).

7    Furthermore, *Greenholtz*, the only Supreme Court decision concerning the due process

8  rights of an inmate in the parole context, specifically recognized the procedural distinction

9  between the government denying an inmate parole and the government determining guilt by way

10  of an adversarial proceeding.  *Greenholtz*, 442 U.S. at 15-16.  Based on this distinction, the

11  Supreme Court determined that a denial of parole only requires the state to provide an

12  opportunity for the inmate to present his case and an explanation for the parole denial — not

13  additional protections, such as those in an adversarial proceeding.  *Id.* (reasoning that "to require

14  the parole authority to provide a summary of the evidence would convert the [parole-

15  consideration] process into an adversary proceeding and to equate the Board's parole release

16  determination with a guilt determination").

17    As a result, for AEDPA purposes, the *Hill* some-evidence standard of review required for

18  prison *disciplinary* hearings should not apply to a federal habeas proceeding challenging a parole

19  denial.  However, Respondent recognizes that the Ninth Circuit has held otherwise and will argue

20  this case accordingly.

21

        **3.    Even if the some-evidence standard were clearly established federal
22           law, the state court decisions correctly applied this standard.**

23    Assuming the some-evidence test is clearly established Supreme Court law for parole

24  denials, Chavez's claim fails under AEDPA because the state court decisions were not contrary

25  to, and did not involve an unreasonable application of, the some-evidence requirement.

26  _____

27  Cir. 2007) (holding that because the Supreme Court had not extended a defendant's right to counsel
   — established in *Wainwright v. Greenfield*, 474 U.S. 284 (1986) — to a competency hearing, federal
28  law was not clearly established for AEDPA purposes).

1     California law requires that some evidence support the Board's decision to deny parole.

2  *Rosenkrantz*, 29 Cal. 4th at 616. Here, the California appellate court cited *Rosenkrantz* in its

3  denial of Chavez's state-court claim. (Ex. K.) Therefore, this denial indicates that the state court

4  applied the some-evidence standard in reviewing the Board's parole denial. As a result, the state

5  court decisions were not contrary to federal law, because it appears that the appellate court *did*

6  apply the some-evidence standard. (*Id.*)

7     Furthermore, when, as here, the state court holding fails to provide a reasoned explanation,

8  the reviewing court must independently review the record to determine whether the state court's

9  decision was a reasonable application of federal law. *Himes v. Thompson*, 336 F.3d 848, 853

10  (9th Cir. 2003). Assuming the some-evidence standard applies, this standard of review "does not

11  require examination of the entire record, independent assessment of the credibility of the

12  witnesses, or weighing of the evidence;" rather, it is satisfied if there is "any evidence in the

13  record that could support the conclusion reached by the [Board]." *Hill*, 472 U.S. at 455-57; *see*

14  *also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence standard is minimal").

15     Here, some evidence supports the Board's decision to deny parole. The Board based its

16  denial on several factors, each containing evidentiary support.

17     First, the Board relied on the gravity of the commitment offense. (Ex. G, at pp. 55-51.) The

18  Board explained that the offense was especially cruel and callous in that Chavez strangled the

19  victim with his hands. (*Id.*) The Board commented that the lack of significant injuries on

20  Chavez after his arrest indicates that he strangled the victim with little provocation or

21  justification. (*Id.*; see also Ex. E, at p. 35 [police report noting a small scrape and two scratches

22  on Chavez at the time of arrest].) The Board further added that the victim sustained injuries to

23  her anus and vagina. (Ex. G, at p. 56; see also Ex. C, at pp. 1, 3.) Also, the Board noted that

24  after killing the victim, Chavez took the victim's car and was found with her jewelry in his

25  pocket. (*Id.*; see also Ex. E, at p. 34.)

26     Although not discussed in the Board's denial, several other facts demonstrate the gravity of

27  the crime. For instance, the victim sustained a small contusion on her scalp and abrasions on her

28  left hand. (Ex. C, at p. 3.) Also, the especially cruel nature of the crime is reflected in the

Answer to Order to Show Cause; Mem. of P. & A.                                    *Chavez v. Curry*
                                                                                 C07-5512 PJH

1  manner in which Chavez disposed of the victim's body. Chavez dragged Ms. Sanchez's body —

2  nude from the waist down — onto a beach and left her face down in the sand. (Ex. E, at pp. 5-6,

3  12.) In the parole hearing, Chavez acknowledged that when he dumped the victim's body, he did

4  not know whether she was in fact dead. (Ex. G, at p. 39.) Nonetheless, he chose not to call

5  "911." (*Id.*) Also, police investigators found two foot marks etched into the back of the victim's

6  sweatshirt. (Ex. E, at pp. 8, 12.) Accordingly, some evidence supports the Board's finding that

7  the offense was especially cruel and callous.

8      Second, the Board relied on Chavez's lack of insight with regard to the underlying causes of

9  the murder. (Ex. G, at pp. 56-58.) The Board noted that by blaming alcohol and claiming that he

10  blacked out, Chavez was distancing himself from the moral responsibility of the murder. (*Id.*)

11      Again, the record supports the Board's finding. During the parole hearing, Chavez

12  represented that the murder occurred as a result of "ignorance completely from being stupid and

13  drunk." (*Id.* at p. 44.) He also stated that "the main issue of it was me and my drinking." (*Id.* at

14  p. 41.) In addition, Chavez blamed his inability to recall several aspects of the crime on his

15  alcohol consumption the night of the murder. (*Id.* at p. 38.) Accordingly, the record reflects that

16  during his parole hearing Chavez blamed his murderous behavior on his alcohol consumption.

17      The Board also rejected Chavez's rationalization that the sole reason for the crime was his

18  intoxication. (*Id.* at p.57.) Here too, the evidence supports the Board's finding. The police

19  report notes that Chavez's blood alcohol content was between .12% and .13% at 6:11 a.m., which

20  was just over an hour after the witness at the crime scene notified police that he had seen a man

21  dump a body on the beach. (Compare Ex. E, at p. 34 with Ex. E, at pp. 11-12.) Thus, Chavez's

22  blood alcohol content was only .05% over the legal limit to drive an automobile. In addition, the

23  police pulled Chavez over while driving, not because he appeared to be drunk, but because the

24  car he was driving — the victim's car — matched the description of the murderer's get-away

25  vehicle. (Ex. E, at pp. 25-28.) Indeed, the evidence indicates that Chavez's intoxication was not

26  as overwhelming as he described it to the Board.

27      Furthermore, Chavez's prior inconsistent statements concerning his "black out" support the

28  Board's finding that Chavez lacks insight. In the parole hearing, Chavez told the Board that he

Answer to Order to Show Cause; Mem. of P. & A.                    *Chavez v. Curry*
                                                                  C07-5512 PJH

14

1    remembers the argument he had with the victim, but that he blacked out before strangling her

2    with his hands. (Ex. G, at pp. 38, 44.) He specified that he does not remember his hands around

3    her throat. (*Id.* at p. 44.) However, when Chavez confessed to the crime, he told police officers

4    that he blacked out *after* he began choking the victim with both hands. (Ex. B, at p. 56; see also

5    Ex. H, at p. 3 [Chavez describing facts of crime to psychologist in 2006].) Accordingly,

6    Chavez's contradictory statements discredit his account of the murder. And, as a result, the

7    record supports the Board's finding that Chavez is distancing himself from the moral

8    responsibility of the murder by claiming he blacked out. (Ex. G, at pp. 56-58.)

9        Lastly, Chavez's gave other testimony at the parole hearing that undermines his account of

10   the murder. For instance, the police noted that Chavez possessed the victim's jewelry in his shirt

11   pocket at the time of the inventory search. (Ex. E, at p. 36-37.) This evidence implies that

12   Chavez may have intended to rob the victim, or at least he decided to loot Ms. Sanchez's body

13   after strangling her. But when asked why he had the victim's jewelry in his shirt pocket, Chavez

14   told the Board that the police had put those items in his pocket when he was arrested. (Ex. G, at

15   pp. 36-37.) Accordingly, either Chavez misrepresented his conduct to the Board, or police

16   officers falsified evidence in the police report. Indeed, some evidence supports the Board's

17   finding that Chavez lacks insight.

18

19       **B.    The State Court Decisions Upholding the Board's Parole Denial
         Reasonably Determined the Facts.**

20       Under the second AEDPA standard, a federal court may grant habeas relief if the state court

21   decisions were based on an unreasonable determination of the facts in light of the evidence

22   presented at the state court proceedings. 28 U.S.C. § 2254(d)(2).

23       Respondent could not obtain Chavez's state-court exhibits. Nonetheless, Chavez's citations

24   in his state court petitions indicate that he attached the same exhibits in those proceedings as he

25   produces here in his federal petition. (See Ex. J; Ex. L, Supreme Court Petition.) These exhibits

26   include the 2007 parole consideration hearing transcript, the 2002 and 2006 mental health

27   evaluations, and the police report all of which support the Board's findings. Accordingly, the

28   state court decisions were not based on an unreasonable determination of the facts in light of the

Answer to Order to Show Cause; Mem. of P. & A.                              *Chavez v. Curry*
                                                                            C07-5512 PJH

1 | evidence presented at those state proceedings.

2 |     Furthermore, an independent review of the record demonstrates that the Board relied on

3 | accurate information with regard to the commitment offense, and Chavez's insight into the

4 | crime.  In addressing the commitment offense, the Board relied on the documents in Chavez's

5 | central file, including the police report, and the probation officer's report. (See Ex. G, at pp. 12,

6 | 36-37.)  In addressing Chavez's insight, the Board relied on Chavez's statements made in the

7 | parole hearing, and the information contained in the police report and mental evaluations.  (See

8 | Ex. G, at pp. 27, 36-37.)

9 |     Chavez does not allege or provide any evidence to suggest that these documents contained

10 | inaccurate information.  Chavez does challenge the reliability of the police report, but fails to

11 | allege what evidence in the police report is inaccurate, or that the Board relied on that inaccurate

12 | evidence. (Pet. at p. 6m-6n.)  Accordingly, the record indicates that the Board relied on accurate

13 | information and did not base its decision on an unreasonable determination of the facts.

14 | / / /

15 | / / /

16 | / / /

1                                    **CONCLUSION**

2          Chavez fails to demonstrate a basis for relief under AEDPA's two standards permitting a

3    habeas remedy after a state court has already adjudicated the same issue.  Under the first

4    standard, the state courts' adjudications of Chavez's claim were not contrary to, or an

5    unreasonable application of, clearly established federal law, as determined by the United States

6    Supreme Court.  Chavez received all process entitled under *Greenholtz*, and — although not

7    required by clearly established federal law — some evidence supports the Board's decision.

8    Under the second AEDPA standard, the record reflects that the evidence presented at the parole

9    hearing, such as Chavez's testimony, and the documents in his central file, accurately reflected

10   the facts.  Thus, Respondent respectfully requests that the petition be denied.

11          Dated:  March 17, 2008

12                                        Respectfully submitted,

13                                        EDMUND G. BROWN JR.
                                         Attorney General of the State of California
14
                                         DANE R. GILLETTE
15                                        Chief Assistant Attorney General

16                                        JULIE L. GARLAND
                                         Senior Assistant Attorney General
17                                        ANYA M. BINSACCA
                                         Supervising Deputy Attorney General
18

19

20                                        /S/ BRIAN C. KINNEY
                                         BRIAN C. KINNEY
21                                        Deputy Attorney General
                                         Attorneys for Respondent
22

23   FinalANSWERChavez.wpd
     SF2007403490
24

25

26

27

28

Answer to Order to Show Cause; Mem. of P. & A.                              *Chavez v. Curry*
                                                                           C07-5512 PJH

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:     **Juan Manuel Chavez v. Ben Curry, Warden**

Case No.:      **C07-5512 PJH**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **March 17, 2008**, I served the attached

**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Juan Manuel Chavez (H-74168)
East Dormitory 098-Low
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689
In pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **March 17, 2008**, at San Francisco, California.

| R. Panganiban | /S/ R. Panganiban |
|---|---|
| Declarant | Signature |

40229707.wpd