# EXHIBIT F

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
APRIL 2007 CALENDAR

CHAVEZ, JUAN MANUEL                                                              H74168

I. **COMMITMENT FACTORS:**

    A.    **Life Crime:** Los Angeles County Court Case #NA013974 on 3/24/93. Count 1, PC 187(A) Murder Second Degree, Sentence of 15 years to Life. The Life term started on 4/21/93. Victim: Sonia Sanchez, age unknown. MEPD is 11/29/02. Received into CDCR on 4/21/93.

        1.    **Summary of Crime:** The summary of the crime is given on page #2 of the Probation Officer's Report, which is dated for the hearing date of 3/24/93. In this report it is described that Chavez and the victim had a previously established social relationship. Chavez and the victim had agreed to meet, and were together at a party and immediately prior to the Life crime. Chavez and the victim had removed some clothing and were preparing to have sexual intercourse when an argument began between them. Chavez began to choke his victim. At that time he claimed that he blacked out. He said that when he awoke his victim was found to be dead. The report of the incident in the Probation Officer's Report closes by saying that the Coroner's Report verified that the victim died of strangulation.

        2.    **Prisoner's Version:** In a prior statement Chavez stated it was an accident, that he had plead so his witnesses would not get hurt as it was gang related.

        3.    **Aggravating/Mitigating Circumstances:**     C-file copy

            a.    **Aggravating Factors:**

                1. The victim was particularly vulnerable, as the murder occurred while she was partially unclothed and anticipating an act of sexual intercourse and intimacy with Mr. Chavez.
                2. Chavez had a relationship of confidence and trust with the victim.
                3. Chavez had the opportunity to cease but continued with his crime.

Sent to Inmate on 4/2/07

        4. Chavez had significant past criminal history which included two juvenile commitments, and one adult commitment of one year in county jail.

        5. The nature of the crime exhibited viciousness, cruelty and callousness.

    b. **Mitigating Factors:** None.

B. **Multiple Crime(s):** None.

    1. **Summary of Crime:** None.

    2. **Prisoner's Version:** None.

II. **PRECONVICTION FACTORS:**

A. **Juvenile Record:** The juvenile record is determined from page #4 of the P.O.R. At age 13 Chavez was arrested for shoplifting and went to Mira Loma Camp in California for 6 weeks. At age 15 he was sent to Camp Afflerbaugh for PCP use. Chavez also ran away from that home and went to a placement in White Water.

B. **Adult Convictions and Arrests:** Chavez was arrested on 1/30/88 by the Los Angeles Police Department, Count #1 filed was P.C. 261 (2) Rape by Force or Fear. On 2/3/88 he was released from custody due to insufficiency of evidence for prosectory purposes. Chavez was arrested on 11/19/91 by the Los Angeles County Sheriff's Department. Counts filed were; Count #1 P.C. 459, Burglary, and Count #2, P.C. 647(G) Disorderly Conduct, Loitering on Private Property, Court action was on 12/23/91 in Compton Court under Case #TA015925-01. Count 1 GTA, was dismissed. Count #2 P.C. 459 Burglary, was convicted at the misdemeanor level. Count 3, P.C. 594(a) Vandalism, a misdemeanor, was convicted. The resulting sentence was assessed at 36 months probation and 365 days in county jail. On 11/29/92 Chavez was arrested by the Long Beach Police Department, and the filed charges were Count #1, P.C. 187(A), Murder, the life crime.

C. **Personal Factors:** Personal factors are given in the P.O.R. and in the ISRS dated 5/13/93. Chavez was born to parents Gloria and Jose Rodriguez on 7/3/68. His father was a welder and his mother sold Avon cosmetics. He has four siblings, and at the time of commitment had four children. No legal marriages are documented. The ISRS documents a non-legalized relationship with an Evelyn Carpio from 1986-1992. At the time of commitment to CDCR, this relationship was not intact, and no documentation exists if any children were born to this specific relationship. Also a relationship was documented with Imelda Montes, from 1990-1993. This relationship is listed as intact at the time of the

CHAVEZ, JUAN        H74168        CTF-SOLEDAD        APR/2007

commitment. No abusive childhood, or any other significant social factors, are documented prior to his incarceration. The P.O.R. documents not only his juvenile arrests, but also documents prior use of drugs. On page 5 of the POR it states that he used cocaine occasionally and used marijuana currently at the time of the life crime. The report indicates that Chavez stated that his estimate of his marijuana use was twice a month at the time of the life crime. Chavez also admitted to past use of PCP, but said that he quit prior to the time of the life crime. Also, on page 6 of the POR, it shows information that is slightly different from that of the ISRS. It shows that his union with Evelyn Carpio lasted 6 years and three children resulted from this union. It shows that he had two other children also, not specifying who their mother was, or their names. Although the ISRS lists four children, it is apparent from page 6 of the POR that he possibly had five children. No further documentation is given as to whether intoxicants were a factor in the life crime, although drug use was a factor in his life prior to the time of the life crime.

III. **POSTCONVICTION FACTORS**:

A. **Special Programming/Accommodations:** Based on a CDC 128C dated 11/6/01, Chavez needed a knee brace for a period of 1 year. This assistive device does not impact placement, and a CDC 1845 is not on file.

B. **Custody History:** Chavez arrived into CDC as an unclassified new arrival at the Tehachapi Reception Center on 4/21/93. His initial CDC processing was completed and the Institutional Staff Recommendation Summary completed on 5/13/93. Chavez' case was referred to a Classification Staff Representative for permanent placement on 5/18/93. The CSR assessed Chavez the administrative determinant of "Life" due to his life term. The CSR also endorsed Chavez for general population placement at Sacramento State Prison Level IV. Chavez arrived at Sacramento State Prison on 5/20/93. Chavez transferred to CCI State Prison IV A Yard on 4/12/94. He transferred to Los Angeles County State Prison on 6/8/95. On 8/31/95, Chavez was transferred to Pleasant Valley State Prison II. On 7/2/98, Chavez was transferred to Correctional Training Facility II. Chavez remains at CTF at this time.

Initial Committee at Sacramento State Prison on 5/28/93 set Chavez' custody at Close A, his classification score at 68, placed him on the work support services WL, and set his WG/PG as A2/B effective that date. Committee action on 9/28/93 dropped his classification score to 64 points, determined that "R" Suffix is not justified and referred his case to the CSR for Level IV transfer. Additional committee at Los Angeles County III State Prison reduced his custody to Close B, reduced his classification score to 50 points and recognized a WG/ PG of A1/A effective 4/12/94, although his work assigned date shows to be 3/10/94 based on the CDC 191 dated 3/94. A re-evaluation of custody level during the same

CHAVEZ, JUAN          H74168          CTF-SOLEDAD          APR/2007

committee action further reduced his custody level, to Medium A. He appeared before Institutional Classification Committee on 7/6/95 due to Ad-Seg placement of 6/28/95. This Ad-Seg placement was due to no misconduct on Chavez' part. This was due to an enemy situation that put the security of inmate Chavez in danger. ICC action the same date increased his custody to Maximum B, and changed his WG/PG to D1/D effective the date of Ad-Seg placement of 6/28/95. CSR action of 8/16/95 endorsed Chavez for placement at PVSP III. Initial committee at PVSP occurred on 9/11/95. This committee established his classification score at 50. His WG/PG is A2/B his custody as Close B, and recognized his WG/PG date as A2/B effective 9/7/95. He was released to Facility A at that location in the general population. He was assigned to work on 2/16/96, and his WG/PG changed to A1/A on that date. Unit Classification Committee of 1/7/98 reduced his custody to Medium A, his classification score to 38, and referred to his entry into CDC with 383 pre-sentence credits as part of the consideration with the reduction of Medium A. UCC action of 5/20/98 reduced his classification score to 26, which was then in the Level II classification score range. This committee referred his case to CSR for appropriate Level II placement. The CSR reviewed his case on 6/3/98. The CSR endorsed his placement at the Correctional Training Facility II. Initial Classification Committee at CTF II on 7/21/98 placed him on the SS (Barber), Vocational Welding, and Vocational Appliance Repair WL's. They referred his case to the Institutional Classification Committee for a CTF-North Patio clearance, which involved jobs of extensive staff contact. This committee also imposed restrictions for no family visiting as a Lifer due to Title 15, CCR 3174(e)(1). UCC action of 5/14/99 dropped his classification level score to 18 points which is in the Level I range. Due to this, his case was referred to CSR for Level I review, recommending retention at CTF due to ineligibility for minimum custody due to his life term. On 6/1/99, the CSR endorsed Chavez for retention at CTF Level II, and permanently assessed the administrative determinant of 'VIO" for a violent criminal conviction.

His work history, vocation history, and education history has been very good. He appears to be a generally motivated student in academic and training environment, and his on the job performance has been satisfactory or better. His program assignments began 3/10/94, when he was assigned to Education as a student. He was re-assigned to Prison Industries work on 4/22/94. His first work assignment was in Textiles. On 2/16/96, he was assigned as an Inmate Barber. This was his first work assignment after transferring to PVSP. From 8/98 to 10/98, Chavez had a brief period employed as a Patio Porter at CTF II North. After this brief period of work, his position on the WL came for assignment and he was placed into Vocational Welding. On 9/10/98, Chavez began his training in Vocational Welding and was rated well in this assignment. The CDC 128E of 10/16/00 documents that Chavez' achieved full certification as an Arc Welder A.W.S. Organization. This CDC 128E recommends that he be placed on the WL for either Stationary Engineering work or Inmate Day Labor work. On 11/14/00,

Chavez was non-adversely unassigned from Vocational Welding due to program completion and certification. On 11/18/00, he was assigned to Yard Work. On 12/8/00 he was reassigned to Culinary work. On 2/7/01, Chavez was assigned to the Maintenance Paint Shop where he has received satisfactory work ratings.

C. **Therapy and Self-Help Activities:** The first documented self-help participation for Chavez was on a 128B dated 10/28/96, documenting his participation in a PVSP Lifer Support Group beginning 10/96. Several CDC 128B's document his on-going participation in this self-help group during his tenure at PVSP. A CDC 128B dated 7/18/97 documents his completion of the 12 hour inmate literacy workshop seminar. This particular self-help group is oriented towards training inmates to give tutoring assistance to fellow inmates. The CDC 128B dated 11/7/97 documented his beginning participation in A.A. on 10/4/97. The next documented participation in self-help is at CTF, with the CDC 128B dated 12/21/98 for completion of the 14 week Impact workshop. This CDC 128B, endorsed by Facility Captain M.V. Guerra, commended Chavez for his participation and willingness to gain insight and empathy to the victims of crime. An AA chrono dated 1/12/99 documents his continuing participation in A.A. at CTF following his transfer from PVSP, with participation beginning in the last quarter of 1998. On-going educational testing, with the 128B dated 2/3/99, shows that Chavez obtained the following Academic Levels: Reading: 12.9, Mathematics: 12.9; Language: 12.9; Spelling: 12.3; Total Battery Score: 12.9. Several chronos to the present time also indicate that Chavez has on-going participation in A.A. CDC 128B dated 9/17/99 documents Chavez receiving 65 hours of training and certification by the Sacramento Inmate Peer Education Programs Regional Coordinator, having qualified him as an Inmate Peer Educator. 128B dated 1/25/00 documents his on-going voluntary time and administrative support as a participant inmate instructor in the Inmate Peer Education Program. This program instructs HIV and Aids Prevention, Hepatitis, Tuberculosis, and Sexually Transmitted Diseased Prevention. Chavez was commended for his willingness to participate in this worthwhile program. A CDC 128B dated 2/16/00 documents his on-going participation in parent education program from 10/27/99 to 2/16/00 for 6.5 hours. Chavez continues in his efforts to assist fellow inmates in self education and participates in AA currently.

Numerous courses in self-help concerning Bible study are documented in the Miscellaneous folder of his Central File. These voluntary correspondence courses, being on mainstream religious scriptures, would generally be considered to be beneficial in his getting a general moral self awareness of such issues as violence and substance abuse. Chavez continued his participation in the AA/NA Program.

D. **Disciplinary History:** Chavez has not received a formal disciplinary report, either at the administrative for serious level, during his entire tenure in CDC. He remains totally discipline-free.

E. **Other:** None noted at this time.

IV. **FUTURE PLANS:**

A. **Residence:** There are extensive family and friends available to provide economic and social support to Chavez if he is granted parole. His primary location of parole home would be with his parents. His parents, Joe and Gloria Rodriguez, live at 2719 100th and 12th Street, Lynnwood, California 90262. The telephone number is (310) 603-5328. Another location is available for Chavez to parole if this address is not available. His brother, Herman Hoyes lives at 1850 E. Avenue S-4, Palmdale, California 93550, telephone number (661) 947-3991.

B. **Employment:** Chavez has several job skills which would provide viable living if paroled. Chavez has learned the painting trade while incarcerated and could find work as a Commercial Painter. Chavez is certified as an A.W.S. arc welder and could easily find work in this field. Chavez has been offered employment with Ray Robinson of Robinson Roofing located at 15565 Pisa Lane, Fontana, California 92336, telephone number (951) 317-4878. Chavez has been working for Prison Industries Authority as a Furniture Wood Worker and could find work in this field if the other opportunities fall through.

C. **Assessment:** Chavez could benefit by providing support letters with viable job offers.

V. **USINS STATUS:** Not applicable as Chavez is a United States citizen.

VI. **SUMMARY:**

A. Prior to release the prisoner could benefit from: remaining disciplinary free, participating in self-help and therapy programs, and obtaining specific employment offers.

B. This report is based upon an interview with the prisoner on 1/11/07 and a complete review by the Correctional Counselor of the central file lasting 1 ½ hours.

C. The prisoner was afforded an opportunity to examine his Central File on 1/11/07 and did so per CDC 128-B dated 1/11/07.

D. No accommodation was required per the Armstrong vs. Davis BPH Parole Proceedings Remedial Plan (ARP) for effective communication.

CHAVEZ, JUAN          H74168          CTF-SOLEDAD          APR/2007

_____  04-06-07
S. Mitchell                      Date
Correctional Counselor I

_____  4/6/07
L. Gibbs                         Date
Correctional Counselor II

_____  4-9-07
R. Pope                          Date
Facility Captain

_____  4-11-07
D. S. Levorse                    Date
Classification and Parole Representative

CHAVEZ, JUAN        H74168        CTF-SOLEDAD        APR/2007