# EXHIBIT H

MENTAL HEALTH EVALUATION FOR
THE BOARD OF PRISON HEARINGS
April, 2006 Lifer Calendar

CORRECTIONAL TRAINING FACILITY SOLEDAD
MARCH, 2006

NAME:              CHAVEZ, JUAN
CDC#:              H-74168
DOB:               7/3/68
OFFENSE:           PC 187 MURDER, SECOND DEGREE
DATE OF OFFENSE:   11/29/92
SENTENCE:          15 YEARS TO LIFE
EVALUATION DATE:   3/18/06
MEPD:              11/30/02

I.   **IDENTIFYING INFORMATION:**

Mr. Juan Chavez is a 37 year old, Hispanic, first term, single male. He is from Los Angeles, and he has served 14 years in custody on his sentence. He is a Christian.

**SOURCES OF INFORMATION:**

Mr. Chavez has been interviewed on two occasions by this writer for this evaluation. The first time he was interviewed for 90 minutes, and the report was never typed. He was interviewed today for one hour. In addition, the central and medical files were reviewed. The psychological evaluation, dated 2/4/02, at CTF-Soledad by Dr. Howlin, Staff Psychologist, included a Psychosocial Assessment. This was reviewed with Mr. Chavez, and it is still current and valid. As a result, this information will not be repeated at this time.

CHAVEZ, JUAN
H-74168
3/18/06
PAGE 2

## CLINICAL ASSESSMENT

**XII.    CURRENT MENTAL STATUS/TREATMENT NEEDS**

Mr. Chavez related during the interview in an open, friendly, talkative and cooperative manner. Hygiene and grooming were good. He was alert and well oriented. His thinking was rational, logical, and coherent. His speech was normal, fluent and goal oriented. Eye contact was good. His intellectual functioning was estimated in the average range. Affect was appropriate. There was no evidence of anxiety or of depression. His judgment was intact. His memory was intact. His self-awareness and insight were good.

Mr. Chavez has remained entirely disciplinary free during his 14 years of incarceration. This is a commendable achievement. It is difficult for a Hispanic individual to not become forced to be involved in racial riots that develop spontaneously at this institution. Also, he has remained clean and sober during that time. In the past, he has had a substance abuse problem in the community. He readily confesses that he used to be an alcoholic. The commitment offense was related to his extremely intoxicated condition. He stated that he used to drink to the point of blacking out. He also had a history of addiction to cocaine for about one year prior to his incarceration. He has been attending AA regularly. He has stated that he will never drink again at any time during his life, because he understands how destructive this habit is. Due to the fact that he has remained clean and sober for 14 years, this is certainly no longer a current diagnostic problem. It should be noted for historical purposes only, but should not to be included in his current diagnosis.

Also, in the past, he has been considered to have an Antisocial Personality Disorder. This is based upon the fact that he was arrested before he was 16 years of age, and he has had some arrests prior to the commitment offense. His life was basically out of control at that time. Due to the fact that he has remained disciplinary free for 14 years, he cannot be considered to have an Antisocial Personality Disorder at this time in his life. People with Antisocial Personality Disorders will continue to disregard rules and regulations, and they will continue to receive disciplinaries. As a result, he no longer qualifies for this diagnostic label.

Chavez            H-74168            CTF-Soledad            3/18/06

CHAVEZ, JUAN
H-74168
3/18/06
PAGE 3

### CURRENT DIAGNOSTIC IMPRESSION

| | |
|---|---|
| Axis I: | No mental disorder |
| Axis II: | No personality disorder |
| Axis III: | No medical disorder |
| Axis IV: | Life term incarceration |
| Axis V: | Current GAF-90 |

### XIII. REVIEW OF LIFE CRIME

Mr. Chavez openly accepted total responsibility for his commitment offense. He described it in the same way he has been describing this offense over the years, and this information is well documented. He can remember some aspects of the commitment offense. He was heavily intoxicated on alcohol at the time, and he blacked out after the victim began slapping him in the face. The argument was over the fact that the victim wanted him to leave his common law wife at the time and to live with her. When he told her that he did not intend to do this, she began slapping him. She tried to choke him, and he in turn choked her. He has no memory of events after that. He later realized that he had killed the victim, who was in the car with him. He removed her body from the car and then tried to leave the area, but he was apprehended. He is very sorry for what he did. He stated that the memory of his assault on the female victim is something he has to live with on a daily basis. He knows that this has a very strong negative impact on her family, and he feels badly about that. His feelings of remorse appear to be sincere and genuine.

Mr. Chavez was investigated for rape charges in 1988. This was found to be a false accusation, and he was released by the police when they realized they had arrested the wrong person. No charges were filed. Also, the last BPT panel stated that the autopsy report indicated that the victim had some trauma to her vagina and rectum. When questioned, Mr. Chavez stated that they were involved in heavy petting. He stated that this trauma could be due to the heavy petting that occurred at that time. He has no memory of causing trauma to the victim, who was also extremely intoxicated at the time.

Mr. Chavez's history of problems are due to his intoxication and poor judgment at that time in his life. There is no evidence to support the conclusion that he has any kind of psycho-sexual disorder or problems in his life.

CHAVEZ, JUAN
H-74168
3/18/06
PAGE 4

## XIV. ASSESSMENT OF DANGEROUSNESS

A. In considering potential for dangerous behavior in the institution, this man has grown, matured, and developed over his years in custody. He has taken parenting classes, anger management classes, the Impact Program and has participated in AA and NA. He has remained disciplinary free, which is commendable. He has good judgment and self-control at this point in his life. As a result, potential for violent behavior in comparison to other inmates is below average.

B. In considering potential for dangerous behavior in the community, he does not pose any more risk than the average citizen in the community. This is supported by the findings of the Level of Service-Revised. This is an actuarial measure that assesses criminal history, disciplinary patterns, vocational achievements, family relationships, drug abuse history, and other factors to determine level of risk on parole. His score places him at the 4.2 cumulative frequency for prison inmates. This means that if 100 men were released on parole, he would do better than 95 of them. This is a low risk level.

C. At the time of the commitment offense, drug and alcohol use were significant risk factors. However, due to the factors noted above, this is no longer a significant risk factor in his life.

## XV. CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with parole planning. Prior to the commitment offense, he worked as a roofer for 3 ½ years. He has a lengthy employment record, and he does have a very strong work ethic. Employment has never been a problem for him. He is now a certified welder as a result of his vocational training in prison. He also has experience in automobile mechanics and engine rebuilding. He does have residence offers available from his family in Southern California. He also has job offers offering employment as a roofer and as a mechanic. He has excellent vocational skills, and employment will not be a problem in this case. He also has a strong

CHAVEZ, JUAN
H-74168
3/18/06
PAGE 5

supportive family in the community that will help him readjust once he is granted parole. All of these factors indicate that he will make a good adjustment on parole. The prognosis for successful adjustment in the community in this case is excellent.

*M. Macomber, PhD* (signature)

M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad

*B. Zika, Ph.D.* (signature)

B. Zika, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

D:   3/18/06
T:   3/19/06