# EXHIBIT J

Copy

MC-275

Name __Juan Manuel Chavez__

Address __P.O. Box 689__

__Soledad, CA 93960-0689__

CDC or ID Number __H-74168__

## CALIFORNIA COURTS OF APPEAL

## SECOND APPELLATE DISTRICT

(Court)

| | |
|---|---|
| __JUAN MANUEL CHAVEZ__ | PETITION FOR WRIT OF HABEAS CORPUS |
| Petitioner | |
| vs | No. _____ |
| __BEN CURRY, Warden (A), et al.__ | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005] Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.,
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

☐ A conviction        ☐ Parole

☐ A sentence        ☐ Credits

☐ Jail or prison conditions    ☐ Prison discipline

☒ Other (specify):   **Board of Parole Hearings violated State and Federal Due Process.**

1  Your name:   **Juan Manuel Chavez**

2.  Where are you incarcerated?   **Correctional Training Facility - East Dormitory**

3.  Why are you in custody?   ☒ Criminal Conviction   ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a.  State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

    **Second Degree Murder**

b.  Penal or other code sections:   **Penal Code 187**

c.  Name and location of sentencing or committing court:   **California Superior Court, Los Angeles County.**

d.  Case number:   **NA 13974**

e.  Date convicted or committed:   **March 24, 1993**

f.  Date sentenced:   **March 24, 1993**

g.  Length of sentence:   **15 years to Life**

h  When do you expect to be released?   **November 30, 2003.**

i.  Were you represented by counsel in the trial court?   ☒ Yes.   ☐ No.  If yes, state the attorney's name and address:

    **Armando Wood**

4.  What was the LAST plea you entered? *(check one)*

☐ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☒ Other:   **No Constest**

5.  If you pleaded not guilty, what kind of trial did you have?

☐ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

---

## INTRODUCTION

Petitioner, Juan Manuel Chavez, specifically challenges the Board of Parole Hearings (Board) finding he's "not suitable for parole" and the finding he "poses an unreasonable risk of danger to society or a threat to public safety, during his parole consideration hearing held 03/05/2007 (Exhibit A).

Noted. Exhibits are bound and submitted and lodged separately.

Petitioner's record shows he has lived a "non-violent" and "crime-free" life since his commitment offense. He meets or exceeds all suitability factors. His mental health evaluations of 2002 and 2006 show him to pose a low risk to public safety. (see Exhibits A and B).

Petitioner's Work History and his involvement in therapy and self-help activities are numerous, clear evidence of rehabilitation (see Exhibit A pages 18-34 and Exhibit B, Section "3").

Petitioner admitted guilt early on to the police (Exhibit E Section "1"), pled guilty to the offense (Exhibit C Section "2") and admits guilt to the Board (Exhibit A), petitioner's version has remained consistent throughout. Petitioner expresses genuine remorse and understands the nature and magnitude of his offense (Exhibit B Section "1"). Petitioner has realistic parole plans and marketable jobs skills (Exhibit A and Exhibit B Section "3").

While courts are not to reweigh suitable and unsuitable evidence, the above uncontested evidence, supports a suitability finding.

Therefore the only remaining evidence for the Board to rely on would be the commitment offense described in the probation report (Exhibit C Section "1"): "The defendant and The Victim were involved in a relationship. The victim and the defendant were present at a party. The defendant and victim agreed to meet at the party. As the defendant and the victim had removed some clothing and were preparing to have sexual intercourse, an argument ensued. The defendant choked

the victim.  Defendant blacked out.  When defendant awoke, the victim was dead.
The coroner's report verified that the victim died of strangulation.  Detective
Collete, agreed with the disposition of this case.  The crime did not appear to be
premeditated.  The above was relied upon by the Board (Exhibit A page 11).

Obviously this is a callous offense, all second degree murders are callous,
the standard for denying parole is the offense must be especially callous or
"particularly egregious".  California Code of Regulations Title 15 Division Two
Section 2403 (c) specifically mandates a base term be set between 18 to 20 years
when the victim is in a personal relationship and her death resulted from
strangulation.

Thus, the Boards finding petitioner would pose a current risk to public
safety (unsuitable to set a parole date) is not supported by "some evidence" of
misconduct in prison, or that petitioner's offense was "particularly egregious".

The Board denying parole for two years (Exhibit A pg 61) when the prior Board
denied parole for one year (Exhibit D Section "1" pg 71) is not supported by any
evidence.  Petitioner has commitment no misconduct to warrant the addition year.

The good conduct credits petitioner has earned in prison will have no
applicable effect now that the Board refuses to set a base term.

The forgoing reasons, the below statutory and regulations cited, and follow
grounds for relief, establish a prima facia cause for relief mandating as an order
to show cause to issue.

///

///

///

CALIFORNIA STATUTORY AND REGULATORY SCHEME FOR PAROLE

The decades old Indeterminate Sentence Law (ISL) California Penal Code (PC) § 1168 statutorily requires parole be denied to those who reasonably are found to pose an unreasonable risk to public safety, In re Rosenkrantz, (2002) 29 Cal.4th 616, 654; In re Dannenberg, (2005) 34 Cal.4th 1061, 1080, quoting In re Duarte, (1983) 143 Cal.App.3d 943, 948. This statutory provision (originally added by Stats. 1917, c.527, p. 665.) was deemed constitutional by the California Supreme Court in Ex parte LEE, (1918) 171 P. 958, provided the parole authority determines, after the expiration of the inmates minimum term of imprisonment, what length of time, if any, such sentenced person be confined.

The Lee Court found the (ISL) emphasizes the reformation of the offender, specifically the punishment is to fit the CRIMINAL NOT THE CRIME. The (ISL) puts before the prisoner great incentives to well-doing in order that his will to do well be strengthened and confirmed by the habit of well-doing. Instead of trying to break the will of the offender and make him submissive, the (ISL's) purpose is to strengthen his will to do right and lessen his temptation to do wrong.

While the Lee Court found 1168 sentences, held in legal effect, a sentence for the maximum term, making them certain, definite and not void for uncertainty [citations], the Lee Court went on to find, when statutory Penal Law provides for a reduction from the term of the sentence for good behavior, a practice by the board of prisons to wait until they are ready to grant release, obviously gives NO rise for the operation of the good credit system, such a practice would cause the (ISL) to be unconstitutional to those entitled to earn conduct credits.

While numerous challenges were raised through the years, the (ISL) remained unchanged until 1975. The California Supreme Court in In re Rodriquez, (1975) 14 Cal.3d 639, found the Parole Authority was systematically failing to set "primary terms" at less then the maximum, not because of "misconduct in prison" but because

2 c

the Authority "cannot" predict future behavior. The Court found the Authorities failure to properly interpret and administer the (ISL) required the Authority to fix "primary terms" for all prisoners (Id. n. 18). Thus prompting the California Legislature to enact (PC) § 1170, the Determinate Sentencing Law (DSL).

In 2005, the California Supreme Court gave an updated historical overview of the application of parole laws in Dannenberg, supra. Summerized as follows:

Decades prior to 1977, California employed the (ISL) for all felonies, felons actual period of incarceration was under the exclusive control of the parole authority, which focused primarily, not on the appropriate punishment for the offense, but on the offender's progress toward rehabilitation. The (DSL) adopted in 1976 abandoned the (ISL) system declaring "the purpose of imprisonment for crime is punishment". Under pre-1977 (ISL) and post-1977 (ISL)-(DSL) Laws, life inmates actual confinement periods within the statutory range are decided by an executive parole agency, an arm of the California Department of Correction (CDC).

Penal Law § 3041 requires the parole agency to meet one year prior to the inmates minimum term, when they "shall normally set a parole release date" in a manner that will provide uniform terms for offenses of similar gravity and magnitude, the release date must "comply with the sentencing rules of the judicial Council and the [Board of Parole Hearings] Board must "establish criteria for the setting of parole release dates" and in doing so shall consider the number of victims of the crime and other factors in mitigation or aggravation of the crime.

In response, the Board adopted regulations covering elements of LIFE OFFENSES (California Code of Regulations Title 15 (CCR 15) § 2400 et seg). The regulations specify that the inmate's release date is to be set by calculating a "base term", the first step in the calculation is to determine where the particular murder fits, in terms of seriousness, on a bi-axial "matrix" of factual variables. The matrix specifies lower, middle, and upper "base terms" for each matrix category (Id., 2403). Once the proper matrix category is selected, the Board must

2 d

impose the middle term unless it finds aggravating circumstances not accounted for in the matrix (Id. 2403(a).).

However, PC 3041(b) provides that a parole release date shall be set, "unless" the Board determines that the inmate is presently unsuitable for the fixing of a parole date, i.e., that "the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual.

The California Legislature clearly intended to apply DSL principles to life-maximum inmates [citation]. Thus, the Board "shall" set a "uniform' parole release date "unless," the Board concludes that a longer period of confinement is warranted for "this individual" by public safety concerns arising from the circumstances of the prisoner's commitment offense or criminal history.

Under the pre-1977 sentencing regime, almost all convicted felons received ISL terms, with short minimums and life maximums. Under this system the parole authority was required to set actual maximum terms for all inmates, proportionate to their individual culpability, this requirement was derived from former PC 3020. Thus, an inmate who made good progress in prison could be granted parole before the end of his maximum term, as fixed by the Adult Authority, but in any event must be released upon expiration of that maximum term [citation]. Also, under pre-1977 system, parole dates for ISL inmates based "primarily upon the nature of the principle commitment offense, supplemented by mathematical increments for additional precommitment offenses" violated the duty to consider all factors relevant to the inmate's suitability for parole.

Adoption of the DSL, with its fixed statutory terms followed by mandatory parole, combined the term-setting and parole functions. In this regard, its been noted that the nature of the offense alone can constitute a sufficient basis for denying parole [citation]. However, sole reliance on the offense

violates (PC) 3041(a) when no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.

Thus, "When the Board bases unsuitability on the circumstances of the offense commitment, it must cite "some evidence" of aggravating facts beyond the minimum elements of that offense, in other words evidence the inmate committed a greater degree of the offense that his or her conviction evidences, i.e. the offense is "particularly egregious" defined as especially heinous, atrocious or cruel manner.

In 2007 the U.S. Supreme Court held in Cunningham v. California, (2007) 549 U.S. _____ [2007 WL 135687] California's post 1977 DSL-ISL Laws that allows a Judge to rely on aggravating circumstances not found true by a jury or pled to by a defendant violates the Sixth and Fourteenth Amendment of the U.S. Constitution.

Clearly, the Board, in a quasi-judicial position, is to set a "base term" for each life prisoner CCR 15 § 2403, unless the Board finds circumstances in aggravation, Dannenberg. The "base term" SHALL be established by utilizing the appropriate matrix of base terms provided in the § 2403 (b) or (c), the Board "shall" impose the middle base term reflected in the matrix unless the panel finds circumstances in aggravation or mitigation § 2403 et seg.

Thus, the holding by the California Supreme Court in Dannenberg, supra, that allows the Board to find elements of aggravating facts beyond the elements found true by a jury or pled to by the prisoner, to deem a prisoner unsuitable to set a "Base Term", appears to violate Cunningham, as would the use of aggravating factors to set a "Base Term" above the mandated middle "Base Term".

Obviously, the Board is lawfully allowed to use factors of aggravation, pled to or found true by a jury, offenses were committed in a "particularly egregious" manner, defined as especially heinous, atrocious or cruel manner.

2 f

Assuming arguendo the commitment offense is "particularly egregious" the California Supreme Court and the Ninth Circuit, respectively, have found the commitment crime can lack the power to supply "some evidence" supporting a denial of parole because of the interplay between two factors, the nature of that crime and the passage of time since its commission. That is, the fact there is "some evidence" the crime was committed and committed a certain way at a certain time does not mean that crime necessarily represents "some evidence" the prisoner's release on parole will pose an unreasonable risk of danger to the public safety at the present time. Whether it possesses the necessary predictive value depends both on the nature of the crime and how long ago it happened, In re Lawrence 2007 WL 1475283 (Cal.App. 2 Dist.) pages 22-23.

Commitment offenses that do not supply "some evidence" to support denial of parole:  In re Smith (2003) 109 Cal.App.4th 489 [Smith, a drug dealer, was convicted for shooting, beating and drowning another drug dealer, convicted of second degree murder, kidnapping and robbery, sentenced to 16 to 1ife]. In re Scott, (2005) 113 Cal.App.4th 573  [a wayward wife told her husband, Scott, she was leaving her lover and returning to the him, but then didn't show up.  In a rage, Scott drove over to the lover's house and shot the lover in the head and thigh and left the scene, prosecutor agreed to second degree murder conviction]; In re Lee (2006) 143 Cal.App.4th 1400 [Lee seeking to collect on a business debt brought a gun and box of bullets along to meeting and when refused a payment fired five shots, wounding the debtor but killing the debtor's wife sentenced to 17 to 1ife]; In re Weider, (2006) 145 Cal.App.4th 570 [Weider another distraught husband took a gun into a public restaurant and fired twice at the man who had been living with his estranged wife for two years but missed, then threatened to kill himself and in the ensuing fracas managed to kill not only the other man, but wounded two innocent restaurant patrons, one of them fatally]; In re Gray 2007 DJDAR 7515

[Gray shot to death Ronnie Waddell, Gray's wife's former husband].

Commitment offenses that do not supply "some evidence" to support denial of parole after the passage of time: In re Elkins, (2006) 144 Cal.App.4th 475 [Elkins a 19 year old addict, on probation for another offense, pummeled his sleeping friend, who he owed money to for drugs, to death with a baseball bat, drove the body into the wilderness and dumped it down a remote embankment, stole more of the victim's belongings from a storage locker, and fled the state, sentenced to 25 to life]; In re Barker, 2007 DJDAR 7548 [Barker participated with his friend in the killing of his friends parents and grandfather]; In re Lawrence, 2007 WL 1475283 [shot here lover's wife in the hand, arm, leg, and neck and then stabbed her with a potato peeler]; Rosenkrantz v. Marshall, (C.D.Cal.2006) 444 F.Supp.2d 1063 [Rosenkrantz, being "outed as a homosexual" by his brother and a friend acquired an automatic weapon, planned and even rehearsed the shooting for a week before blasting his victim with a fusillade from the gun]; Martin v. Marshall, (N.D.CAL.2006) 431 F.Supp.2d 1038 [Martin a drug user shot his drug dealer whom he owed money, and two other innocent restaurant patrons, killing both the dealer and one of the patrons].

All of the above murders involved more than the "shockingly vicious use of lethality" or "exceptionally callous disregard for human suffering" that can be found in petitioner's offense. Several resulted in the killing or wounding of multiple victims. Several had economic gains as opposed to emotional motives, and several of the offender's were involved in other criminal activities at the time of the offense. Yet State and Federal Courts found these earlier commitment offenses failed to provide "some evidence" of the perpetrator's present dangerousness if released to the outside world.

Petitioner has a state created protected liberty interest in parole under the California due process clause Rosenkrantz, supra, 29 Cal.4th at 661; and a

2 h

federally protected liberty interest in parole, McQuillion v. Duncan, (2002) 306
F.ed 895; Biggs v. Terhune, (2003) 334 F.3d 910; Sass v. California Board of
Prison Terms, (2006) 461 F.3d 1123; Irons v. Carey, (2007) 479 F.3d 658.

In In re Elkins, (2006) 144 Cal.App.4th 475, 487, (review denied February 7,
2007) "with an overview of the law as summarized in In re Rosenkrantz, (2002) 29
Cal.4th 616, and two subsequent decisions, In re Scott, (2004) 119 Cal.App.4th 871
(Scott I), and In re Scott, (2005) 133 Cal.App.4th 573 (Scoot II), the Court found
the only "statutory" factor required to be considered, and overarching
consideration, is "public safety".

In determining risk to "public safety" the regulations CCR § 2042 require
that "all relevant, reliable information available to the Board shall be
considered in determining suitability for parole. The relative importance of each
unsuitable or suitable factor is left to the judgment of the Board, (Scott II, at
592). The goal of (PC) § 3041, is that "release on parole is the rule", rather
than the exception.

Some evidence of the existence of a particular factor does not equate to some
evidence that release unreasonably endangers public safety. "A commitment offense
is an unsuitability factor that is immutable and whose predictive value may be
very questionable after a long period of time" see Scott, supra, at 594-595 & fn
9, quoting People v. Murtishaw, (1981) 29 Cal.3d 733, 768 [Cal. Supreme Court
found, strong legal and scientific support that "predictions of future
dangerousness are exceedingly unreliable," even where the passage of time is not a
factor and the assessment is made by an expert]; see also, Elkins supra, at 498;
Lee supra, 1407; Rosenkrantz v. Marshall, supra, at 1084.

As for accepting responsibility "some evidence" must support an inmate's lack
of "understanding the nature and magnitude of the offense" CCR 15 § 2402 (d)(3),
an inmate during a parole hearing is not required to admit guilt (PC) § 5011 (b)

2 j

only the acceptance of all circumstances he's already admitted is all that is
required, Elkins supra, at 499; Lee, supra, § 1414.

Other than rehabilitation, imprisonment of those who are convicted of
committing crimes generally serves and is justified by one or more of three
societal goals.

(1)  RETRIBUTION:  Punishment of the offender for his offenses.

(2)  DETERRENCE of future offenses by the offender and other potential offenders.

(3)  INCAPACITATION of the offender so she is not free to commit other offenses.
Quoted from Lawrence, supra pages 23-24, quoting from, 1 LaFave, Substantive
Criminal Law, (2nd ed. 2003), § 1.5, pages 36-47, and authorities cited therein.

When the Legislature sets an indeterminate maximum term with a fixed minimum
term, the latter can be viewed as setting the period of imprisonment deemed
necessary to satisfy the first two purposes, while the justification for continued
imprisonment beyond that fixed minimum depends on the need for continued
incapacitation of the offender, Lawrence, Supra at 24.

Finally, as has been stated, because the overarching consideration is public
safety, the test in reviewing the Board's decision denying parole "is not whether
some evidence supports the reasons the Board gives for denying parole, but whether
some evidence indicates a parolee's release unreasonably endangers public safety
(Lee at 1408).

As summarized by the California Supreme Court, the judicial branch is
authorized to review the factual basis of a decision of the Board denying parole
in order to ensure that the decision comports with the requirements of due process
of law, in conducting such a review, the court may inquire whether "some evidence"
in the record before the Board supports the decision to deny parole, based upon
factors specified by the statute and regulation.  If the decision's consideration
of the specified factors is not supported by some evidence in the record and thus

2 🖋

is devoid of a factual basis, the court should grant the petition for writ of habeas corpus (Rosenkrantz at 658), remanding the case for a new hearing being futile, the only appropriate remedy is to grant release (Saif'ullah 2005 WL 1555389 at *16; Rosenkrantz v. Marshall, 2006 WL 2327085; McQuillion v. Duncan, (2003) 342 F.3d 1012, 1015-101; Lee and Elkins.

Petitioner, being pro per, asks the court to use less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner, (1972) 404 U.S. 519.

GROUND ONE:

Petitioner's State and Federal Due Process rights are being violated by the Board's use of immutable factors to deny petitioner a grant of parole after petitioner exceeded his minimum term of imprisonment.

Petitioner was sentenced to 15 years to life, the state applied his statutorily authorized conduct credits and set his minimum term at November 30, 2002, a fact found by the Board (see Exhibit A pg 3). Penal Code 3041 (a) establishes this minimum term to be a actual parole date. Yet the Board, five years and numerous hearings later, continues to find petitioner unsuitable for parole, not because of misconduct in prison, but because he committed a crime.

Numerous courts have found that continual denials of parole based on immutable factors, after successful rehabilitation of petitioner espoused by the prison system and impeccable prison programming, violates both State and Federal Due Process of Law. California State Due Process was found to be violated in Lawrence; Barker; Weider; Elkins; Lee; Scott; Gray; (Supra) and Federal Due Process was found to be violated in Martin v. Marshall; Rosenkrantz v. Marshall; Biggs v. Terhune; (Supra) and Sanchez v. Kane, (2006) 444 F.Supp.2d 1049; Willis v. Kane, 2007 WL 1232060.

As the Elkins court explained, after years in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, a Life Term

3

Inmate's record and psychiatrist reports that show he no longer possess attributes of instability, cruelty, impulsiveness, violent tendencies and the like, make predictions based solely on far distant offenses nearly zero Elkins, 144 Cal.App. 4th at 502. California Supreme Court denied review, unexplained denials implies consent Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Courts and Penologist's have recognized that the purpose of the ISL Law, in relation to the administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender, this Law places emphasis upon the reformation of the offender, the punishment is to fit the criminal rather than the crime. The Board's reason for denial is opposite of this principal. In Greenholtz v. Inmates of Nebraska, 442 U.S. 15, the U.S. Supreme Court found the behavior record of an inmate during confinement is critical in determining the degree the inmate is prepared to adjust to parole release.

In petitioner's case, the Board found substantial evidence of rehabilitation and crime free behavior (see Exhibit A), for over 15 years, yet found him to be a current risk to public safety because of his offense (Id. pg 55).

Clearly petitioner's due process rights were violated, he has served his punishment time for the offense, the minimum term, has been found by trained psychologists to be a low risk to public safety, see Exhibit D Sections "1" and "3", proof parole should have been granted.

GROUND TWO:

Does the Indeterminate Sentence Law substitute the will and discretion of the Board of Parole Hearings as to the time when petitioner is to be released for the fixed right to a deduction for his term of good conduct?

The Court, agreed to by the District Attorney, applied 174 days pre-conviction credits and petitioner is vested with a statutory right to earn post-conviction good time conduct credits, In re Monigold, (1988) 205 Cal.App.3d 1224. As discussed, the regulations CCR 15 2403 (c) strangulation murder calls for 18 to 20 years - earned credits of 4 months a year post-conviction credits and

4

the 174 days of pre-conviction credits shows petitioner has exceeded his term prescribed by the regulation.

The Board has failed to fixed the length of time for which petitioner is to serve, they appear to waiting until the time they are ready to grant him his discharge, there is obviously no opportunity for the operation of the good time credit system.  When the Law substitutes the discretion of the Board for a statutory right, then it appears to be unconstitutional (see Ex Parte Lee, (1918) 177 Cal. 690).

GROUND THREE:

Is the Board's findings that petitioner needs therapy in order to face, discuss, understand and cope with stress in a nondestructive manner, supported by evidence in the record?

The Board said petitioner is unpredictable and a threat to others because he has failed to make progress to face, discuss, understand and cope with stress (Exhibit A pg 57).  Trained psychologist M. Macomber, found the opposite, specifically:  "Due to the fact that he has remained clean and sober for 14 years, this is certainly no longer a current diagnostic problem" (Exhibit B Section "1" pg 2) and "In considering potential for dangerous behavior in the institution, this man has grown, matured, and developed over his years in custody."  "He has good judgment and self-control".  "In considering potential for dangerous behavior in the community, he does not pose any more risk than the average citizen" (Id. at 4).

During sentencing the Trial Judge found petitioner understood the nature of his offense (Exhibit C Section "2" pg 3).

Thus, this finding by the Board is not supported by any evidence.

GROUND FOUR:

Trial records have been found to be the only reliable information, tested by the cross-examination process, thus the use of police reports during parole hearings seem to violate Cal. Code of Regs. tit. 15 2402.

4 a

Police reports (provided for the courts convince Exhibits E and F) are not part of the record of conviction, Draeger v. Reed, 9 Cal.App.4th 1511. Therefore all references to police reports in the transcripts are not evidence and must be stricken. During parole hearings, "evidence" must have "indicia of reliability" Biggs v. Terhune, 334 F.3d at 915, "some evidence" standard is only met, if the "evidence" is reliable, in the "record" and supports the "record" Powell v. Gomez, 33 F.3d 39, 40, Cato v. Rushen, 824 F.2d 703, 705 and Superintendent v. Hill, 472 US 455-456. The United States Supreme Court held in Crawford v. Washington, 2004 DJDAR 2949 "The Confrontation Clause commands that "reliability" be assessed in a particular manner: By testing in the crucible of cross-examination".

Thus, references by the Board to police reports of what petitioner may or may not have done after the offense (Exhibit A pg 58) is unreliable, not part of the trial record and not pled to by petitioner.

During the change of plea hearing and sentencing hearing of petitioner (see Exhibit C Section "2") the state attorney set forth the facts of the case, the Superior Court Judge accepted them as true and reliable, and that is all that should be allowed to be considered during a parole suitability hearing.

The Board must be prohibited from using unreliable untested police reports as "some evidence" in a attempt to over ride reliable factual judicial findings to deny parole.

GROUND FIVE:

Can petitioner be denied parole when his offense, strangulation murder, is covered in the matrix CCR 15 2043 (c)?

The California Supreme Court said that parole can be denied when the offense is "particularly egregious" in other words, more than the minimum elements to commit the offense.

Petitioner's offense is "strangulation murder" elements which are clearly spelled out in the Board's regulations CCR 15 2403 (c).

Nothing about petitioner's crime was found to be beyond this matrix. The

Board specifically found:  "a causal friend of yours was killed through strangulation (Exhibit A pg 55).

There is no evidence to show this crime was "especially cruel and callous manner" ID.)

GROUND SIX:

There is no evidence to support the 2007 Board's recommendation for a new psychological report (Exhibit D Section "2").

The 2002 Board recommended a new psych report, asking for numerous issues to be addressed, prior to petitioner's next hearing (Exhibit D Section "4") a report was made addressing all concerns (Exhibit B Section "1") and accepted by the 2006 Board (Exhibit D Section "1").

No new factor, concerns, crimes or misbehavior has been committed by petitioner since the above psych report or Board hearing.

Yet, the 2007 Board recommended a new psych report, asking for the same issued to be addressed (Exhibit D Section "2") as was recommended by the 2002 Board (Exhibit D Section "4"), and accepted by the 2006 Board.

Thus, no evidence supports this continued abuse of repeated recommendations for new psych reports.

GROUND SEVEN:

What evidence supports a two year parole denial after a one year parole denial?

The 2006 Board denied parole for one year, saying: "you are probably an exception to what we normally see and that you've done all the right stuff and that you just need to stay positive for the next year (Exhibit D Section "1").

Petitioner stayed positive, programmed, continued self-help, etc.  The arrest and release report that was a concern of the 2006 Board was cleared up (Exhibit D Section "1")(Exhibit G Section "1").

Thus, no evidence existed for the 2007 Board to give a two year denial.

GROUND EIGHT:

Did petitioner's trial counsel provide ineffective assistance of counsel

during petitioner's change of plea hearing?

The trial Judge asked petitioner's attorney if he had discussed all the ramifications of the plea agreement. Counsel replied YES. (Exhibit C Section "2"). Yet, there is no evidence that petitioner's attorney advised petitioner that he would be denied parole year after year due to his crime, that his crime will be judged more than covered in the plea, and that his rehabilitation efforts will account for nothing. Clearly evidence to support a IAC claim.

Thus, counsel failed to explain that a plea to a second degree murder conviction is really a means for the D.A. to obtain through the Board a life without parole sentence, by using the crime to always justify denial of parole.
GROUND NINE:

Petitioner's 6th amendment right to trial by jury was violated by the Board's finding he committed a greater offense then found true by a jury or pled to.

In California v. Cunningham, 2007 WL 13567, the U.S. Supreme Court said California's Law that allows findings of aggravating factors beyond those found true by a jury or pled to by a defendant violates his right to a trial by jury.

Here, the Board is finding facts beyond the crime pled to, to support a reason to deny parole. In U.S. v. Gaudin, 515 U.S. 506, 522-523 (1995) the high court held "A jury verdict that one is guilty of the crime means, of course, a verdict that one is guilty of each necessary element of the crime."

Clearly, the Boards use of factors beyond those pled to by petitioner and listed in its own matrix which clearly cover his offense, violates Cunningham.
GROUND TEN:

Does the Board's denial of parole violate petitioner's right to due process when it is inconsistent with CDCR's decision to house petitioner in a facility reserved for "non-violent" inmates.

CDCR has deemed petitioner to be a "non-violent" inmate. The evidence, he is housed in East Dormitory, housing reserved for "non-violent", "low risk", working", "programming inmates" see Johnson v. California, 321 F.3d 791, 795. The

evidence also includes CDCR's assessment that petitioner's offense did not contain elements of "Unusual Violence", "Multiple Murders", "Execution Style Murder", "High Notoriety" regulation requirement for level II classification placement.

CCR 15 3375 (b) requires "public safety" be considered during inmate's classification hearings and CCR 15 3375.2 (a)(7) prohibits a life term inmate from being housed in a level I or Level II facility if his crime contained elements of: "Unusual Violence", "Multiple Murders", "Execution Style Murder" or "High Notoriety". None were found by CDCR. Some evidence required to support decision In re Wilson, 202 Cal.App.3rd 661, 666-667; Superintendent v. Hill, 472 U.S. 445.

Thus, the Board's reasons to deny parole, petitioner is a current risk to public safety, is opposite and contrary to CDCR's findings, the Board's failure to consider CDCR's risk assessment violates petitioner's right to Due Process.


                              CONCLUSION

WHEREFORE: "NO EVIDENCE" can be found in petitioner's "record" he currently poses an unreasonable risk to public safety. "NO EVIDENCE" that his crime was "Particularly egregious". Remand for a new parole hearing is futile. CDCR and Trained experts find him to be a low risk or no more than the average citizen.

For all the forging reasons this petition show be granted.


I, JUAN MANUEL CHAVEZ, hereby declare all the above true and correct under the penalty of perjury.

Respectfully Submitted,


*Juan M. Chavez*
JUAN MANUEL CHAVEZ                    DATED: 07/07/07


                              4e

8  Did you appeal from the conviction, sentence, or commitment?   ☐ Yes.  ☒ No.   If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

_____

b. Result: _____   c  Date of decision. _____

d. Case number or citation of opinion, if known: _____

e. Issues raised:  (1) _____

(2) _____

(3) _____

f. Were you represented by counsel on appeal?   ☐ Yes.  ☒ No.   If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court?   ☐ Yes.  ☒ No.   If yes, give the following information:

a. Result: _____   b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised:  (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

**Issues not ripe during appeal process.** _____

_____

11. Administrative Review:

a  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

**Board of Parole Hearings does not have an appeal process.** _____

_____

_____

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available?   ☐ Yes.  ☒ No.

*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☒ Yes. If yes, continue with number 13.   ☐ No. If no, skip to number 15.

13. a. (1) Name of court: _**Other filings have no relation or bearing on the hearing challenged.**_

   (2) Nature of proceeding (for example, "habeas corpus petition"): _____

   (3) Issues raised: (a) _____

       (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   b. (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised: (a) _____

       (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

   **No court has ever held any hearings for my case.**

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

   **No delay, Board of Parole Hearing being challenged was not final until July 3, 2007, see Exhibit A page 61.**

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

   _____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☐ No.  If yes, explain:

   **unknown, superior court said I was denied in April 2007 but did not send decision.**

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

   **Original habeas petitions can be filed in any California Court system, beings the**
   ~~does not have time, or simply fails to answer, I choose to file first in this court.~~

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true

Date: 07/07/07 _____  _____
(SIGNATURE OF PETITIONER)

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN STATE CUSTODY**
(C.C.P. §§ 1013(A), 2015,5)

I, _____ JUAN MANUEL CHAVEZ _____ , declare:

I am over 18 years of age and I am party to this action.  I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California.  My prison address is:

> JUAN MANUEL CHAVEZ _____ , CDCR #: H-74168 _____
> CORRECTIONAL TRAINING FACILITY
> P.O. BOX 689, CELL #: ED-002-Up
> SOLEDAD, CA  93960-0689.

On _07/07/07_____ , I served the attached:

PETITION FOR WRIT OF HABEAS CORPUS

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined.  The envelope was addressed as

follows:

CALIFORNIA COURTS OF APPEAL
SECOND APPELLATE DISTRICT
300 S. Spring St. Fl 2, N Tower
Los Angeles, CA 90013-1213

CALIFORNIA ATTORNEY GENERAL
455 GOLDEN GATE AVE. #11000
SAN FRANCISCO, CA 94102-3664

I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on _07/07/07_____ .

_____
JUAN MANUEL CHAVEZ
Declarant

RECEIVED
ATTORNEY GENERAL

2001 JUL 10  A 10: 48
CA. DEPT. OF JUSTICE
SAN FRANCISCO
MAILROOM

Office of the Attorney General
Kristoder Jorstad
300 South Spring Street
Fifth Floor, North Tower
Los Angeles, CA  90013


Case Number B200403
Division 7
In re Juan Manuel Chavez
on
Habeas Corpus