## STANDARD OF REVIEW

The district court's order denying habeas corpus relief is subject to

de novo review. *Smith v. Baldwin*, 466 F.3d 805, 811 (9th Cir. 2006). Any

findings of fact by the district court are reviewed only for clear error. *Id.*

AEDPA does not permit habeas corpus relief here unless Chavez shows the

state court decisions were contrary to, or involved unreasonable applications

of, clearly established federal law, or were based on an unreasonable

determination of the facts. 28 U.S.C. § 2254(d).

## ARGUMENT

### I.

## THE DISTRICT COURT PROPERLY DENIED RELIEF BECAUSE CHAVEZ RECEIVED ALL OF THE PROCESS DUE UNDER CLEARLY ESTABLISHED FEDERAL LAW.

### A.   Chavez Failed to Present a Prima Facie Case That the State Breached the Terms of His Plea Agreement or That His Plea Agreement Was Invalid.

Chavez claims the denial of his parole release breached the terms

of his plea agreement. Chavez asserts his plea agreement promised: (1) his

release on parole; (2) no opposition to parole by the district attorney; and (3)

the parole board would not consider the facts of his offense due to his no-

6

contest plea to the homicide charge. Chavez also claims that his no-contest

plea lacked consideration and was not knowingly made. These claims have no

basis and Chavez has failed his burden of proof with respect to these claims.

Habeas petitioners bear the burden of proving their constitutional

claims. *Garlotte v. Fordice*, 515 U.S. 39, 46, 115 S.Ct. 1948, 1952 (1995).

"This burden of proof must be carried by a preponderance of the evidence."

*Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

### 1. There Is No Evidence Chavez Was Offered Promises Regarding His Release On Parole.

Chavez supports his breach of plea agreement claims with the

transcript of the hearing in which Chavez entered his no-contest plea and

waived arraignment for judgment and sentencing. (SER 106-118.) There is no

evidence from which to infer that Chavez had been promised his release on

parole, that the district attorney would not oppose parole, or that the state

parole board would limit its parole review. Indeed, at the hearing, Chavez

understood that a plea to second-degree murder would be punished with a

sentence of fifteen years to life in prison, with only the possibility of parole.

(SER 108-09.)

Under clearly established federal law, any promises made by the

prosecution, in which ". . . it can be said to be part of the inducement or

7

consideration, such promise must be fulfilled." *Santobello v. New York*, 404

U.S. 257, 262, 92 S.Ct. 495, 499 (1971). Chavez has presented no evidence

that his no-contest plea was induced by any promises that are now unfulfilled.

### 2. Chavez's No-Contest Plea Was Supported With Adequate Consideration.

Chavez argues that his plea agreement lacked adequate

consideration because he was denied parole at his initial parole consideration

hearing. Chavez contends he received no consideration in exchange for his

plea because he argues a denial of parole is tantamount to a sentence of life

without the possibility of parole. This claim lacks merit as Chavez received

adequate consideration for his no-contest plea.

Chavez's plea to second-degree murder removed the prospects of a

first-degree murder conviction and of a more severe sentence such as the death

penalty or life in prison without the possibility of parole.[2] Additionally,

Chavez admitted to his desire for a plea in order to protect his witnesses from

rival gangs. (SER 105.)

---

2. The medical examiner noted the victim had suffered sexual trauma, including rectal bleeding. (SER 10-11.) Any murder committed during a rape, or attempted rape, is a first-degree murder. Cal. Penal Code § 189. A first-degree murder committed while engaged in rape or sodomy, or attempted rape or sodomy, is punishable by death or imprisonment for life without the possibility of parole. *Id*. § 190.2(a)(17)(C)-(D).

8

### 3. Chavez's No-Contest Plea Is Valid Because It Was Voluntary and Intelligent.

Finally, Chavez argues that his plea was invalid because he was not apprized of the consequences of his plea. Specifically, Chavez asserts that his attorney failed to inform him of the California parole consideration process and the manner by which the state parole authority would determine his suitability for parole.

The Supreme Court held that a petitioner may challenge the validity of his plea only as to its "voluntary and intelligent"character by showing the advice of his counsel was below constitutional standards. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608 (1973); *see United States v. Hernandez*, 203 F.3d 614, 618 (9th Cir. 2000). A plea is not voluntary when "it is the product of threats, improper promises, or other forms of wrongful coercion" and it is not intelligent when the defendant was unable to assess "the advantages and disadvantages of a trial as compared with those attending a plea of guilty." *Hernandez*, 203 F.3d at 619 (quoting *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

Even assuming Chavez did not understand the California parole process at the time, there is no evidence his decision to plead was affected by "threats, improper promises, or other forms of wrongful coercion" or that he

9

was unable to assess intelligently the advantages and disadvantages of proceeding to trial.

Chavez failed to present any evidence to support his plea agreement claims. Just as the district court and the state courts found, Chavez has failed to satisfy his burden of proof. As such, habeas corpus relief is improper and these claims must be dismissed.

### B. Chavez's Claim That The Denial Of Parole Was Not Supported With Adequate Evidence Fails To Present Any Ground For Relief Under AEDPA's Standard of Review.

The Antiterrorism and Effective Death Penalty Act (AEDPA) restrains judicial authority to grant relief to a state prisoner. *See* 28 U.S.C. § 2254(d). On a claim adjudicated on the merits by a state court, a reviewing court may not grant habeas corpus relief unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*.

AEDPA affords a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the

benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357,

360 (2002) (quotations omitted). However, the state courts need not cite to, or

even be aware of, the governing Supreme Court case law. *Early v. Packer*, 537

U.S. 3, 8, 123 S. Ct. 362, 365 (2002). The state court adjudications merit

deference "so long as neither the reasoning nor the result of the state-court

decision contradicts [clearly established federal law]." *Id.*

As a threshold matter, the Court must decide what, if any, "clearly

established Federal law" applies. *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S.

Ct. 1166, 1172 (2003). In making this determination, the Court may look only

to the holdings of the United States Supreme Court at the time of the state

court's adjudication. *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653

(2006) (*quoting Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495 (2000)).

AEDPA does not permit relief based upon circuit caselaw. *See Crater v.*

*Galaza*, 491 F.3d 1119, 1126 (9th Cir. 2007); *see also Duhaime v. Ducharme*,

200 F.3d 597, 600-01 (9th Cir. 2000).

## 1.  The Supreme Court Has Not Clearly Established a Liberty Interest in Parole for California Inmates.

A convicted person does not have a constitutional right to be

released prior to the expiration of a validly-imposed sentence. *Greenholtz v.*

11

*Inmates of Neb. Penal Complex*, 442 U.S. 1, 8, 99 S. Ct. 2100, 2104 (1979).
The "unique structure and language" of a state's parole statute, however, may
create an expectation that is entitled to some constitutional protection. *Id*. at
12, 99 S. Ct. at 2106.

Recognizing that this Court held to the contrary in *Sass v. Cal. Bd.
of Prison Terms*, Respondent preserves the argument that the California parole
statutes do not create an expectation of early release for life inmates. *See* 461
F.3d 1123, 1128 (9th Cir. 2006). California's parole consideration procedure
consists of a two-step process in which the Board must first find an inmate to
be suitable for parole before any release date may be calculated. *In re
Dannenberg*, 34 Cal. 4th 1061, 1087 (Cal. 2005). The Board has no
mandatory duty to find an inmate suitable for parole and an inmate has nothing
more than a hope of parole release. *Id*. ("Thus, the statutory language belies
the notion of a mandatory duty to set a release date for all indeterminate life
inmates, or for any particular such prisoner."). Indeed, the California Supreme
Court has repeatedly held that a prisoner is not entitled to receive parole–a
prisoner is only entitled to have his application for parole duly considered. *In
re Rosenkrantz,* 29 Cal.4th 616, 655 (Cal. 2002).

12

Additionally, the denial of parole does not implicate a federal liberty interest because continued confinement under an indeterminate life sentence does not impose an "atypical or significant hardship" that invokes the protections of the due process clause. *See Sandin v. Connor*, 515 U.S. 472, 485 (1995). A parole denial does not alter an inmate's sentence, impose a new condition of confinement, or otherwise restrict an inmate's liberty–he continues serving his validly-imposed life sentence until his next parole consideration hearing.

As California inmates do not have the requisite federal liberty interest in parole, AEDPA does not permit relief here. Even if Chavez does have a federal liberty interest in parole, AEDPA still does not permit relief because Chavez received all the process due under clearly established federal law.

**2.    Clearly Established Federal Law Entitled Chavez Only to an Opportunity to Be Heard and a Statement of Reasons for the Denial of His Parole.**

The parole consideration process is not part of a criminal prosecution, so "the full panoply of rights due a defendant in [a criminal] proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir.

13

1987). In the lone case addressing the process due in a state parole proceeding, the Supreme Court held that due process requires only: (1) "an opportunity to be heard"; and (2) "when parole is denied [the parole authority] informs the inmate in what respects he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16, 99 S. Ct. at 2108.

When Chavez became eligible for parole consideration, he received an opportunity to be heard and a statement of reasons for the denial of parole. Chavez does not claim otherwise. Instead, he argues that he should be entitled to additional due process protections--beyond those recognized by the Supreme Court.

However, Chavez's purported due process claims are actually state law claims. Chavez argues the Board improperly found him unsuitable for parole. The California Penal Code and the California Code of Regulations outline the manner in which an inmate's suitability for parole should be considered. Whether the Board complied with California law while considering Chavez's suitability for parole is a question of state law. An alleged violation of state law is not an appropriate ground for federal habeas corpus relief. 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-75 (1984). To the extent Chavez's claims raise a federal question,

14

Chavez seeks an expansion of due process which the Supreme Court has
neither recognized nor clearly established.

### 3.    The Supreme Court Precluded Scrutiny into the Merits of a Parole Decision.

Chavez challenges the merits of the Governor's parole decision;
however, the Supreme Court has not authorized such scrutiny. Indeed, the
Supreme Court rejected such an expansion of due process by holding that,
beyond the two *Greenholtz* procedures "[t]he Constitution does not require
more." *Id*. at 16, 99 S. Ct. at 2108.

The Supreme Court limited the reach of federal due process over
state parole matters in deference to the state's utilization of parole as a tool for
rehabilitation. *Greenholtz*, 442 U.S. at 13-14, 99 S. Ct. at 2107.
Acknowledging that "[n]o ideal, error-free way to make parole-release
decisions has been developed," the Supreme Court noted the inevitable
problems and disappointments attendant to a state's administration of its parole
system. *Id*. at 13, 99 S. Ct. at 2107. However, the Court emphasized that the
shortcomings of a parole procedure should not be burdened by the courts. *Id*.
The goal of rehabilitation would be furthered by fostering a state's
experimentation with parole, not by impeding the state's efforts. *Id*. The Court

eschewed any intrusion beyond the two *Greenholtz* procedures out of a concern of an adverse impact on the future of parole: "Our system of federalism encourages this state experimentation. If parole determinations are encumbered by procedures that states regard as burdensome and unwarranted, they may abandon or curtail parole." *Id.*

Furthermore, the Supreme Court highlighted the necessarily subjective and predictive nature of a parole decision and distinguished a parole procedure from an adversarial proceeding. *Id.* at 13-14, 99 S. Ct. at 2107. The safeguarding procedures, necessary in an adversarial context, are inapplicable to parole proceedings. *Id.* at 14, 99 S. Ct. at 2107 ("Procedures designed to elicit specific facts, such as those required in *Morrissey, Gagnon,* and *Wolff,* are not necessarily appropriate to a Nebraska parole determination.").[3/]

Permitting any scrutiny into the merits of a parole decision departs from *Greenholtz*. The Board's consideration of Chavez's suitability for parole is not part of an adversarial process and may not be reviewed on the merits. An inmate must be informed why he was denied parole, but due process does not require a parole decision to specify any evidence. *Greenholtz*, 442 U.S. at

---

3. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756 (1973); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963 (1974).

15-16, 99 S. Ct. at 2108. An explanation for the denial for parole was intended to guide the inmate's future behavior, and not as a summary of the evidence supporting the parole decision. *Id.* The Supreme Court refused to require a summary of evidence for parole release matters because such "would tend to convert the [parole] process into an adversary proceeding . . . ." *Id.*

*Greenholtz* precludes any review into the merits of a parole decision because due process does not require the Board to provide evidentiary support for its decision. Chavez is not entitled to relief here because AEDPA is not an avenue for broadening the scope of habeas corpus relief beyond that which has been clearly established by the Supreme Court. 28 U.S.C. § 2254(d). While California state law requires more than the *Greenholtz* procedures, no Supreme Court holding supports Chavez's due process claims. In the absence of clearly established federal law, AEDPA mandates deference to the state courts and state law to preserve the constitutional rights of inmates challenging parole denials. *See* 28 U.S.C. § 2254(d); *see also Musladin*, 127 S. Ct. at 654.

While previous circuit decisions applied the some-evidence test to the merits of a parole denial, those decisions are not binding precedent under AEDPA. Additionally, recent Supreme Court opinions effectively overruled and superceded those circuit cases.

17

**C.   Ninth Circuit Cases Applying the Some-Evidence Test to Parole Decisions Are Not Clearly Established Law Under AEDPA.**

AEDPA limits the basis upon which a state prisoner may obtain habeas corpus review by denying precedential effect to circuit decisions. *Crater*, 491 F.3d at 1126; *Duhaime*, 200 F.3d at 600-01. A state prisoner is limited to the federal law clearly established by the United States Supreme Court. 28 U.S.C. § 2254(d). Federal habeas corpus review is limited to whether a state court's adjudication of a prisoner's claim conflicts with a Supreme Court holding. *See Duhaime*, 200 F.3d at 601.

In *Duchaime*, the district court had relied solely upon Supreme Court precedent to deny relief, despite Ninth Circuit jurisprudence to the contrary. *Id*. at 600. The petitioner argued that the district court had erred by violating the principles of stare decisis and Article III of the United States Constitution. *Id*. The *Duchaime* court rejected those arguments. *Id*.

The court noted the 1996 amendments prevented a court from disturbing a state court decision based upon a conflict with Ninth Circuit precedent. *Id*. There was no stare decisis or Article III violation because "[s]ection 2254(d) merely limits the source of clearly established law that the Article III court may consider" which does not impact judicial authority to

18

resolve the outcome of a case. *Id.* at 601 (citing *Green v. French*, 143 F.3d 865, 874 (4th Cir. 1998)). Therefore, the *Duchaime* court upheld the district court's judgment despite its disregard of previous Ninth Circuit decisions. *Id.*

This Court recently reinforced AEDPA's limit on circuit precedent, rejecting the argument that § 2254(d)(1) violates separation of powers. *Crater*, 491 F.3d at 1126. This Court held that "§ 2254(d)(1) renders decisions by lower courts non-dispositive for habeas appeals" and noted that the Supreme Court had accepted this interpretation of the federal statute. *Crater*, 491 F.3d at 1126, fn. 8 (citing *Musladin*, 127 S.Ct. at 652-54).

## D. Even If Circuit Precedent Is Binding For AEDPA Purposes, The Supreme Court Effectively Overruled and Superceded Those Decisions.

Without overruling a decision, the Supreme Court can undercut the precedential value of a circuit decision such that it is no longer binding law. *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003). The Supreme Court's reasoning is controlling on a three-judge panel, despite a circuit opinion to the contrary, when the Supreme Court's resolution of an issue is "clearly irreconcilable" with the theory or reasoning of the circuit opinion. *Id.* at 900.

19

The *Gammie* court found persuasive the theory of *stare decisis* espoused by Justice Scalia and Justice Kennedy, that the lower courts are bound not only by the holdings of a higher court, but also by its "mode of analysis" or "explications of the governing rule of law." *Id.* (citations and quotations omitted). The goal of preserving the consistency of circuit law "must not be pursued at the expense of creating an inconsistency between our circuit decisions and the reasoning of state or federal authority embodied in a decision of a court of last resort." *Id.*

The Supreme Court's recent holdings present a conflict with circuit opinions in which this Court applied the some-evidence test to the parole matters. *See, e.g., Sass*, 461 F.3d at 1128; *see also Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003). The some-evidence test was derived from *Superintendent v. Hill*[4] and was applied to parole consideration because a parole denial and a disciplinary conviction ". . . both directly affect the duration of the prison term." *Sass*, 461 F.3d at 1128. However, this reasoning is clearly irreconcilable with the reasoning of *Musladin*. *See* 127 S. Ct. at 654.

In *Musladin*, the Supreme Court considered whether spectator conduct was subject to the test for inherent prejudice that governed state-

---

4. 472 U.S. 445, 105 S. Ct. 2768 (1985).

20

sponsored conduct. 127 S. Ct. at 651-52. The Ninth Circuit had granted relief

after concluding the Supreme Court had clearly established the test for inherent

prejudice at trial. *Id*. at 652. The Supreme Court disagreed: "although the

Court articulated the test for inherent prejudice that applies to state conduct [],

we have never applied that test to spectators' conduct." *Id.* at 653-54. In other

words, the clearly-established test for prejudice was not a clearly-established

standard for evaluating spectators' conduct.

The Supreme Court tracked the *Musladin* analysis in an opinion

issued in May of this year. *See Schriro v. Landrigan*, __ U.S. __, 127 S. Ct.

1933 (2007). In *Schriro*, the defendant had impeded his attorney's efforts at

trial and later claimed ineffective assistance of counsel. *Id*. at 1942. An *en

banc* panel of this Court held that clearly-established federal law permitted

review over such a claim. *Id*. The Supreme Court disagreed and held that its

holdings did not clearly establish an entitlement to habeas corpus relief where

the defendant had impeded counsel's efforts at trial. *Id*. The Supreme Court

has continued to acknowledge the tension between its decisional law and the

Ninth Circuit's AEDPA analysis by remanding two matters for further

21

consideration in light of *Musladin*: *Patrick v. Smith*, 127 S. Ct. 2126 (Mem)

(Apr. 30, 2007); *Knowles v. Mirzayance*, 127 S. Ct. 1247 (Mem) (Feb. 20,

2007). The opinions in those matters did not address *Musladin*. *See*

*Mirzayance v. Knowles*, 175 Fed. Appx. 14 (9th Cir. 2006); *see also Smith v.*

*Mitchell*, 437 F.3d 884 (9th Cir. 2006).

The Supreme Court's recent jurisprudence interpret AEDPA in a

manner that is clearly irreconcilable with the application of *Hill* to non-

adversarial matters. Therefore, in accordance with the principles outlined in

*Musladin*, this Court must conclude that no clearly established federal law--as

determined by the Supreme Court--supports any relief here.

**E.    Assuming the Some Evidence Test Applies to State Parole
Decisions, the District Court's Judgment Must be Affirmed
Because Some Evidence Supports the Board's Decision.**

The some-evidence test is a deferential standard, guarding against

arbitrary deprivations of due process. *See Hill*, 472 U.S. at 455. This test is

"minimally stringent" and requires no more than "a modicum of evidence." *Id.*

The reviewing court may not independently assess the credibility of witnesses

or independently weigh the evidence. *Id.* Due process is satisfied so long as

"there is any evidence in the record that could support the conclusion reached

by the disciplinary board." *Id.* at 455-56.

The Board found Chavez unsuitable for parole based, *inter alia*, upon the gravity of his commitment offense, his criminal history, and a psychological evaluation finding Chavez to be an above-average potential for violence in the community. (SER 91-92.) The Board concluded that the negative factors outweighed the positive factors such that Chavez was not yet unsuitable for parole release. (SER 92.)

The record supports the Board's findings with more than the "meager" evidence that was constitutionally sufficient in *Hill*. *See* 472 U.S. at 457. In *Hill*, the Supreme Court upheld a disciplinary conviction where the record lacked any direct evidence and contained only circumstantial evidence which failed to identify which inmate had committed the alleged assault. *Id*. at 456-57. However, the Supreme Court upheld the disciplinary board's decision despite such "meager" evidence because "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id*. at 456-57.

The Board's decision is supported by some evidence such that the parole denial was not arbitrary or devoid of evidence. Thus, if the *Hill* standard applies here, the district court judgment must be affirmed.

23

## CONCLUSION

The district court's judgment should be affirmed because it properly

denied Chavez's claims. Chavez has failed to present any ground for relief under

AEDPA. Chavez received all of the process due under clearly established federal

law. The state court adjudications denying habeas corpus relief were not contrary

to, or unreasonable applications of, clearly established federal law and were not

based on an unreasonable determination of the facts.

Dated:  February 25, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
HEATHER BUSHMAN
Supervising Deputy Attorney General

CHARLES CHUNG
Deputy Attorney General
Attorneys for Respondent-Appellee

07-56427

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**JUAN MANUEL CHAVEZ,**

Petitioner-Appellant,

v.

**A. P. KANE, Warden,**

Respondent-Appellee.

**STATEMENT OF RELATED CASES**

To the best of our knowledge, there are no related cases.

Dated:  February 25, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California
HEATHER BUSHMAN
Supervising Deputy Attorney General

CHARLES CHUNG
Deputy Attorney General
Attorneys for Respondent-Appellee

25

## CERTIFICATE OF COMPLIANCE WITH
## RULE 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(A)(7)(B) because:

   ☒    this brief contains 5,005 words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒    this brief has been prepared in a proportionally spaced typeface using
        WordPerfect, version 8.0 in 14 point Times New Roman.

   Dated:  February 25, 2008

                   Respectfully submitted,

                   EDMUND G. BROWN JR.
                   Attorney General of the State of California
                   HEATHER BUSHMAN
                   Supervising Deputy Attorney General

                   CHARLES CHUNG
                   Deputy Attorney General
                   Attorneys for Respondent-Appellee

SD2008600026
60279235.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Chavez v. Kane**

No.:    **07-56427**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>February 25, 2008</u>, I served the attached **RESPONDENT-APPELLEE'S ANSWERING BRIEF,** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Suite 1702, Los Angeles, CA 90013, addressed as follows:

Juan Manuel Chavez (H-74168)               The Honorable Manuel L. Real
Correctional Training Facility                     c/o Clerk of the Court
P.O. Box 689                                            United States District Court, Central District
Soledad, CA 93960-0689                          United States Courthouse
                                                               312 North Spring Street, Room 8
*In Pro Per*                                             Los Angeles, CA 90012-4793

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on February 25, 2008, at Los Angeles, California.

_____                    _____
            P. Wang                                                      Signature
          Declarant

50228297.wpd

# EXHIBIT "B"

## LAW OFFICES
## LOS ANGELES COUNTY PUBLIC DEFENDER

WILBUR F LITTLEFIELD
PUBLIC DEFENDER

600 COUNTY BUILDING
415 WEST OCEAN BOULEVARD
LONG BEACH, CALIFORNIA 90802

February 17, 1993

Terrence McGee, M.D.
P.O. Box 2767
Malibu, CA. 90265

Re: People v. Chavez

Dear Dr. Mcgee:

Please find enclosed a copy of the laboratory results from the defendant's urine sample. From the crime investigation report it is difficult to tell exactly when this urine sample was provided. It appears from page 45 that the sample may have been provided at 7:19 A.M. on 11/29/92. I am hopeful this additional information will aid you in your analysis of the case.

Currently the case is set for trial 3/24/93 in Department C, Long Beach Superior Court. Please advise as to your availability to testify.

Sincerely,

ARMANDO J. WOOD
Deputy Public Defender

AJW:

| NAME | REFERENCE | ATTORNEY | FTA NO. |
|---|---|---|---|
| CHAVEZ,    JUAN MANUEL | NA013974 | WOOD | 930295 |

## LABORATORY REPORT

| ANALYSIS | RESULT POSITIVE | NONE CONFIRMED | COMMENTS |
|---|---|---|---|
| URINE ALCOHOL | X | | 0.15% AS BLOOD ALCOHOL LEVEL |
| URINE SODIUM FLUORIDE | X | | 0.4% |
| URINE COCAINE, SEMI-QUANT. | X | | COCAINE AND/OR COCAINE METABOLITE PRESENT AT A CONCENTRATION GREATER THAN 10 MICROGRAMS PER MILLILITER. |

| | SPECIMEN DATE | DATE RECEIVED | DATE REPORTED |
|---|---|---|---|
| BY | 11/29/92 | 02/04/93 | 02/12/93 |

01/27/93  ◄ COURT DATE

TO:
LONG BEACH OFFICE
L.A. COUNTY PUBLIC DEFENDER
415 WEST OCEAN BLVD., 6TH FLOOR
LONG BEACH, CALIFORNIA  90802

**FTA**

**FORENSIC TOXICOLOGY ASSOCIATES, INC.**
36 South Chester Avenue
Pasadena, California 91106
(818) 796-2534 · (714) 739-1129

*TERENCE SEAN McGEE, M.D.*
*P.O. Box 2767*
*Malibu, CA 90265*

March 16, 1993

Armando J. Wood, Deputy Public Defender
600 County Building
415 West Ocean Blvd.
Long Beach, CA  90802

Re:   People v. Juan M. Chavez
      Case No. NA013974
      Charge:  187 P.C.

Dear Mr. Wood:

I received the laboratory report from Forensic Toxicology Associates and I read your note as well.

Urine alcohol is shown as a blood alcohol level of 0.15% and urine cocaine is shown present at a concentration of greater than ten micrograms per milliliter.

This pretty much confirms that Mr. Chavez was drinking heavily and using cocaine on the night in question.

As to my availability to testify:  I will be in Tulare County doing a lecture for the Tulare County Sheriff's Department and the California Narcotic Officers Association on Monday, March 29, 1993 and there is a possibility that I will be testifying in Long Beach on Wednesday, March 24, 1993.  At the moment I am otherwise unengaged for the month of March.

If you require any further discussion in this matter or if I can assist you in any way, please feel free to call at any time.

Best regards,

Terence Sean McGee, M.D.

TSM/pm

*(310) 457-8030*

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, _____Juan Manuel Chavez_____, declare:

I am over 18 years of age and I am party to this action.  I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California.  My prison address is:

> Juan Manuel Chavez___, CDCR #: H-74168
> CORRECTIONAL TRAINING FACILITY
> P.O. BOX 689, CELL #: ED-098-Low
> SOLEDAD, CA  93960-0689.

On ____April 6, 2008_____, I served the attached:

TRAVERSE TO RESPONDENT'S ANSWER TO THE ORDER TO SHOW CAUSE;

MEMORANDUM OF POINTS AND AUTHORITIES

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined.  The envelope was addressed as

follows:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102

CALIFORNIA ATTORNEY GENERAL
455 GOLDEN GATE AVENUE SUITE 11000
SAN FRANCISCO, CA 94102-7004

I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on  APRIL 6, 2008_____.

JUAN MANUEL CHAVEZ
Declarant

Juan Manuel Chavez,
H 74168 ED 088L
P.O. Box 689
Soledad, CA 93960-0689

United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102-9680
P.O. Box 36060




